# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **JOE NATHAN JAMES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 1:22-cv-00241-TFM-N |
| | ) |
| **STEVE MARSHALL,** | ) |
| | ) |
| **Attorney General,** | ) |
| **State of Alabama** | ) |
| | ) |
| **Defendant.** | ) |

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff Joe Nathan James has brought this action pursuant to 42 U.S.C. § 1983 against Steve Marshall, Alabama Attorney General, in his official capacity. Plaintiff's complaint fails to state any claim against Defendant upon which relief can be granted, Plaintiff lacks standing, and all claims are time-barred, as shown on the face of the complaint. As a result, this lawsuit should be dismissed.

## Background

Plaintiff has been on death row since his 1996 conviction for the murder of Faith Hall. *James v. State*, 723 So. 2d 776, 786 (Ala. Crim. App. 1998). Plaintiff, who had multiple prior convictions, committed a brutal murder during the course of a burglary, and his guilt is not in doubt. His conviction and sentence are final because he has completed his direct appeal, state postconviction review, and federal habeas

1

review. Consequently, on March 17, 2022, the State of Alabama filed a motion to set his execution date with the Alabama Supreme Court. On June 7, 2022, the Alabama Supreme Court granted the State's motion, setting Plaintiff's execution for July 28, 2022. The present action, along with multiple other contemporaneous actions, have been filed since Plaintiff's execution date was set.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, a court accepts the plaintiff's factual allegations as true. *Id.* at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). "[A]s early as possible," a district court should resolve "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367, 1367 n.35 (11th Cir. 1997). Such disputes "always present[] a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." *Id.* at 1367. "A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion when the complaint shows on its

face that the limitations period has run." *Powell v. Thomas*, 792 F. Supp. 2d 1285, 1287 (M.D. Ala.), *aff'd*, 643 F.3d 1300 (11th Cir. 2011).

## Facts

Plaintiff alleges scant facts to support his claims. His allegations against the Defendant arise out of on an agreement supposedly reached with the Federal Defenders for the Middle District of Alabama (hereinafter "the Federal Defenders")[1] to "end a lawsuit" over Alabama's lethal injection protocol. (Complaint at 4.) While Plaintiff fails to plead the style or case number of that action, this court may take judicial notice of the docket of the Federal District Court for the Middle District of Alabama in which that action was filed. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir.), *cert. denied sub nom. Gus Paez v. Inch*, 141 S. Ct. 309 (2020) ("district court "could properly take judicial notice of the online state court dockets"). That action, styled as *In re: Alabama Lethal Injection Protocol Litigation* (hereinafter "the Midzaolam Litigation"), was dismissed on July 11, 2018. Order, *In re Alabama Lethal Injection Protocol Litigation*, 2:12-cv-00316-WKW (M.D. Ala. July 11, 2018), ECF No. 429 (order dismissing action). The Midazolam Litigation was dismissed on the motion of the parties because "pursuant to statutory amendments to section 15-18-82.1 of the Alabama Code, which became effective on

---

1. Plaintiff has also filed a separate § 1983 action against the Federal Defenders arising out of this factual nexus. *James v. Federal Defenders, Middle District*, 1:22-cv-00242-TFM-N (M.D. Ala.).

3

June 1, 2018, each Plaintiff . . . timely elected that his death sentence be executed by nitrogen hypoxia[.]" *Id.* at 1.

The elections that gave rise to the dismissal of the Midazolam Litigation were made following a change in Alabama law that was applicable to all death row inmates. On March 22, 2018, Alabama Laws Act 2018-353 amended the Code of Alabama[2] to introduce nitrogen hypoxia as a method of execution. While the primary method of execution in Alabama remains lethal injection, inmates sentenced to death prior to the effective date of the act were given a thirty-day period in which to make an election of hypoxia in writing to the warden of their correctional facility; otherwise, election would be deemed waived. ALA. CODE § 15-18-82.1(b)(2) (2018).

> Many inmates—both those represented by the Federal Defenders and by other counsel—elected nitrogen hypoxia during the thirty-day period (hereinafter "the election period") that extended from June 1– 30, 2018. *Id.* Almost fifty inmates, many not represented by the Federal Defenders, opted into nitrogen hypoxia during this period. (Doc. 44-7 at 3). Not every inmate who did so utilized the form provided. (Doc. 139 at 183).

*Smith v. Dunn*, 568 F. Supp. 3d 1244 (M.D. Ala.), *aff'd sub nom. Smith v. Comm'r, Alabama Dep't of Corr.*, No. 21-13581, 2021 WL 4916001 (11th Cir. Oct. 21, 2021), *cert. denied sub nom. Smith v. Dunn*, 142 S. Ct. 12 (2021). Plaintiff did not make a timely election pursuant to section 15-18-82.1(b)(2).

---

2. Specifically, sections 15-82-82(a)–(b) and 15-18-82.1(a)–(c), (f), (i)–(j) of the Code of Alabama.

## Argument

Plaintiff alleges federal constitutional claims under 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendant, acting in his official capacity, violated Plaintiff's rights to equal protection and due process under the Fourteenth Amendment. (Doc. 1 at 9.) Plaintiff alleges that this violation occurred when Defendant and the Federal Defenders entered into an agreement to end the Midazolam Litigation by allowing "only the Federal Defenders [sic] clients to exercise an option, [sic] to elect nitrogen hypoxia, which by law they had previously waived and was [sic] forbidden to exercise," citing section 15-18-82.1(b)(2).[3] Plaintiff further alleged that because the Federal Defenders' clients were allowed to make an untimely nitrogen hypoxia election (thus incidentally avoiding an earlier execution by lethal injection) and he was not, he has been denied equal protection and due process. Defendant moves to dismiss Plaintiff's claims.

**I.    Plaintiff's Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

---

3. In an apparent scrivener's error, Plaintiff actually cites to "§15-18-82.1(2)." No such code section exists, and subsection (b)(2) is the only subsection with a "2" in the designation.

*Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (per curiam) (quoting FED. R. CIV. P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). As a result, under § 1983, "analysis begins by identifying the specific constitutional right allegedly infringed." *Id.* at 394; *see also Baker*, 443 U.S. at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged."). Plaintiff complains generally that his Fourteenth Amendment rights to equal protection and due process were violated by Defendant. However, he does not adequately allege *how* Defendant violated these rights, nor does the face of the complaint show that any violation occurred.

**A. Plaintiff's Claim is Meritless on its Face.**

Plaintiff's claim of an equal protection and due process violation arises out of his contention that "only" the Federal Defenders' clients were allowed to make an election for nitrogen hypoxia, "which by law" they had "waived and were "forbidden to exercise." (Doc. 1 at 4.) While Plaintiff fails to plead the date of that election—a necessary fact for evaluating "untimeliness"—this Court may again look to the

dismissal order of the Midazolam Litigation, which dismissed the action because "pursuant to statutory amendments to section 15-18-82.1 . . . each Plaintiff in [the Midazolam Litigation] has **timely elected** that his death sentence be executed by nitrogen hypoxia[.]" Order at 1, *In re Alabama Lethal Injection Protocol Litigation*, ECF No. 429 (emphasis added). Whether Plaintiff's failure to plead the date of the Federal Defenders' clients' election is due to ignorance or to an attempt to avoid dismissal of his action, the result is the same: no untimely election occurred. The timing of the Federal Defenders' clients' election is important because Plaintiff claims that pursuant to section 15-18-82.1(b)(2),[4] he and other inmates were "not allowed" to elect when the Federal Defenders' clients did. But because those inmates made a *timely* election, the supposed "agreement" could not have been the cause of unequal treatment.

This last point is well demonstrated by the face of Plaintiff's complaint. He does not allege that he wished to elect in June 2018 during the thirty-day election window. Nor does he allege that he did not know of the election period. At bottom, his claim of an equal protection violation amounts to nothing more than a last-ditch attempt to avoid his justly imposed and timely ordered execution, and it does not "state a claim to relief that is plausible on its face" or, indeed, withstand the barest

---

4. Notably, Plaintiff claims that he was not "allowed" to elect by operation of the statute, not by any action of Defendant.

scrutiny. *Iqbal*, 556 U.S. at 678. As such, Plaintiff's complaint should be dismissed because he has failed to state a claim upon which relief can be granted.

### B. Plaintiff lacks Article III standing.

A federal court cannot consider a dispute unless the plaintiff satisfies the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). He must show "(1) injury in fact, (2) causation, and (3) redressability." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021); *see Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1547 (2016). In order to obtain preliminary relief, Plaintiff must produce evidence that he is "likely to succeed on the merits" of his claim. *Nken v. Holder*, 556 U.S. 418, 434 (2009). That includes producing evidence demonstrating a likelihood of standing. *See, e.g.*, *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2nd Cir. 2020) ("At the preliminary injunction stage, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." (quotation omitted)); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (plaintiff's "burden to demonstrate standing in the context of a preliminary injunction motion is at least as great as the burden of resisting a summary judgment motion" (quotation omitted)); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D. C. Cir. 2015) ("A party who fails to show a 'substantial likelihood of standing' is not entitled to a preliminary injunction."). Thus, while "an inability to

establish a substantial likelihood of standing" at the preliminary injunction stage may preclude "dismissal of the case," it nonetheless "requires denial of the motion for preliminary injunction." *Vilsack*, 808 F.3d at 913.

As set forth above, there are three requirements to prove standing. First, the alleged injury must be "concrete and particularized," "'affect[ing] the plaintiff in a personal and individual way.'" *Sierra*, 996 F.3d at 1113 (quoting *Lujan*, 504 U.S. at 560 n.1). When a plaintiff seeks injunctive relief (as Plaintiff does here), he must demonstrate "that a *future* injury is imminent—that there is 'a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future.'" *Id.* (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)). Second, the injury must have been caused by the defendants against whom the plaintiff seeks relief. Causation is "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Third, the injury must be redressable by the federal court—there must exist "a likelihood that the requested relief will redress the alleged injury." *Id.* The Supreme Court has made clear that "[t]his triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement." *Id*. at 103–04 (footnote omitted).

The burden of demonstrating standing falls to the plaintiff. Standing "cannot

be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *E.g.*, *Spokeo*, 136 S. Ct. at 1547; *Warth v. Seldin*, 422 U.S. 90, 518 (1975). If a court doubts that standing exists, even if the parties have not raised the issue, it is obligated to consider the matter sua sponte. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). As the Supreme Court has stated, "[t]his question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Steel Co.*, 523 U.S. at 94 (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900))

Even assuming *arguendo* that Plaintiff has established injury in fact and traceability, on the face of the complaint it is clear that he cannot satisfy the third prong of the standing test. It is uncontroverted that this alleged harm occurred in June or July of 2018, when the Midazolam Litigation was dismissed and/or during the elections period created by section 15-18-82.1(b) of the Code of Alabama. However, "courts cannot issue injunctive or declaratory relief under the ADA for events that occurred only in the past, even if the past events amounted to a violation of federal law." *Lorenzo Font v. Francisco*, 260 F. Supp. 2d 394, 401 (D.P.R. 2003). "To satisfy the redressability requirement in the context of claims for injunctive relief, it is not enough that the plaintiff has been wronged in the past—there must be a "real or immediate threat that the plaintiff will be wronged again.'"

10

First, the supposed agreement did not confer any benefit on the Federal Defenders' clients – all of whom elected during the elections period. Nor was the election form the only way to elect. Indeed, as Judge Marks recognized in *Smith*, the form was neither required nor necessary to make an election; other inmates elected nitrogen hypoxia without resorting to the Federal Defenders' form. Memorandum Opinion and Order at 24–25, *Smith*, 2:19-cv-00927, ECF No. 170.

Second, the relief that Plaintiff appears to seek is to be allowed to "make a fair and informed election" of nitrogen hypoxia. (Doc. 1 at 7.) But the election process itself, including the thirty-day election window, was created by the Alabama Legislature, not the Defendant, and the election period has passed. This gives rise to the second, practical, reason why Plaintiff's claim is not redressable: the only relief that would solve the alleged harm is retrospectively altering the election statute itself to create a new election period for Plaintiff. A harm is not redressable if the relief sought is outside of the Defendants' power. *Michigan Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 999 (6th Cir. 2020) ("[B]ecause Johnson has neither the authority nor ability to designate a BAIID manufacturer's service provider, the harm alleged from Interlock's removal from the certified BAIID manufacturer list is not redressable by Johnson in her official capacity.") Indeed, the Defendant cannot by any action or inaction give effect to an election made outside of the period set out in section 15-18-82.1(b) of the Code of Alabama. Prospective

injunctive relief is unavailable because Defendant entirely lack the power to void the statute or to grant Plaintiff "another bite" at the election apple. The election statute does not set out any role *at all* in the election process for the Attorney General of Alabama.

The lack of redressability is made clear by a recent reported case, *Support Working Animals, Inc. v. Governor of Florida*, in which the Eleventh Circuit recognized that "[s]tanding's redressability requirement mandates that it be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021). *Support Working Animals* considered whether the Florida Attorney General was a proper defendant in "an amendment to the state constitution outlawing gambling on greyhound racing." *Id*. at 1200. The court found that the plaintiff's alleged injuries in connection with that amendment were not redressable because:

> A judgment against the Attorney General prohibiting her from enforcing § 32 wouldn't significantly increase the likelihood of redressing the plaintiffs' injuries because (1) the Attorney General has no enforcement authority . . . .

*Id.* The same is true here, and the Defendant has no more power to "unring the bell" than the Florida Attorney General did in *Support Working Animals*. At bottom, Plaintiff cannot establish redressability because the Defendant has no authority to alter or enforce the election scheme established by the Alabama Legislature and signed into law by the Governor. Thus, a "favorable order" from this Court would

not make it any more likely that Plaintiff would obtain the relief sought. Consequently, Plaintiff's complaint should be dismissed for lack of standing.

## II. Plaintiff's Complaint Should Be Dismissed Because It Is Clear From Its Face That The Limitations Period Has Expired On His Claims.

Even if Plaintiff had successfully stated a claim upon which relief could be granted, his claim is time-barred by Alabama's statutes of limitation. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); *see also Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In Alabama, "the two-year limitations period of Ala. Code § 6-2-38(l) applies to section 1983 actions." *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).

A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (internal quotations omitted) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). In general, "the statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)).

It is apparent from the face of Plaintiff's complaint that this action is time-barred. Plaintiff's alleged cause of action would have accrued when Defendant and the Federal Defenders entered into the supposed "agreement" and allowed some inmates to make untimely elections but barred others (including Plaintiff) from doing likewise. As discussed above, the period during which Plaintiff alleges these events occurred encompasses the statutory election period and the dismissal of the Midazolam Litigation. Also, as shown above, both the election period and the dismissal of the Midazolam Litigation occurred in June and July of 2018. Plaintiff does not allege, or even suggest, that he was unaware of those events. Indeed, Plaintiff, along with every other death row inmate at Holman, received a copy of the election form described in his complaint in 2018. *Smith v. Dunn*, 568 F. Supp. 3d 1244 ("Sometime between June 26 and June 28, but before the July 2, 2018 statutory deadline, the ADOC directed that an election form be distributed to death-row inmates at Holman Correctional Facility ("Holman").).

Consequently, any cause of action arising out of those events would have been subject to a two-year statute of limitations that would have expired in July 2020 at the latest. *McNair*, 515 F.3d at 1173; *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 876 (11th Cir. 2017) (affirming dismissal of § 1983 claim as untimely and holding that limitations period runs from date on which "the facts which would support a cause of action should have been apparent to any person with a reasonably

14

prudent regard for his rights"). Because Plaintiff failed to bring this action until June 22, 2022, just over a month before his execution and nearly four years after the beginning of the limitations period, his claim is due to be dismissed.

## Conclusion

For the reasons stated above, the Court should dismiss all claims asserted against Defendant Marshall.

    Respectfully submitted,

    Steve Marshall,
    *Attorney General*

    /s/ Richard Dearman Anderson
    Richard Dearman Anderson
    *Assistant Attorney General*

    OFFICE OF ATTORNEY GENERAL
    501 Washington Avenue
    Montgomery, Alabama 36130-0152
    Telephone: (334) 242-7300
    Richard.Anderson@AlabamaAG.gov

    **Counsel for Defendant Marshall**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July 2022, I electronically filed the foregoing using the CM/ECF system, and that I have further served a copy on the Plaintiff, by placing same in the FedEx Priority Overnight addressed as follows:

>Joe Nathan James
>Z610
>Holman Correctional Facility
>1240 Ross Road
>Atmore, AL 36502

/s/ Richard Dearman Anderson
*Counsel for Defendant Marshall*
