# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOE NATHAN JAMES, JR. AIS 0000Z610, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIV. ACT. NO. 1:22-cv-241-TFM-N ) |
| STEVE MARSHALL, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's request for preliminary injunction. *See* Doc. 1. In the motion, Plaintiff requests the Court enter a preliminary injunction against Defendant to stay his scheduled execution. Defendant filed a motion to dismiss which contained a response to the preliminary injunction. *See* Doc. 8. The motion is ripe for the Court's review. After the Court considered the motion and response, the Court **ORDERS** the motion for preliminary injunction is **DENIED**.

### I. PARTIES AND JURISDICTION

Plaintiff is Joe Nathan James, Jr. ("Plaintiff" or "James"), an Alabama Inmate whose execution is set for July 28, 2022. He filed a complaint pursuant to 42 U.S.C. § 1983 against Defendant Steve Marshall in his official capacity as the Attorney General of the State of Alabama. The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Capital Litigation History

The history of the crime is discussed in great length in the September 30, 2014 opinion issued in James' habeas appeal. *See James v. Culliver*, Civ. Act. No. 10-S-2929, 2014 WL 4926178, 2014 U.S. Dist. LEXIS 139696 (N.D. Ala. Sept. 30, 2014). In short summary here, James was convicted of murdering his former girlfriend, Faith Hall, after breaking into the apartment where she was located and shooting her several times in the head, chest, and abdomen. He was tried twice and found guilty both times. The first conviction was reversed due to the judicial error in the admission of certain evidence. However, after retrial, he was again convicted of capital murder on June 16, 1999. The jury then returned a sentencing verdict recommendation by unanimous vote that James be sentenced to death. On July 9, 1999, the trial judge conducted the formal sentencing hearing, adopted the sentencing recommendation, and sentenced James to death. James appealed the second conviction and sentence which were affirmed by the Alabama Court of Criminal Appeals on April 28, 2000. *See James v. State*, 788 So. 2d 185 (Ala. Crim. App. 2000). The Alabama Supreme Court denied certiorari on December 15, 2000, and the United States Supreme Court did the same on May 21, 2001. *See Ex parte James*, No. 1991959, 2000 Ala. LEXIS 1511 (Ala. Dec. 15, 2000), *James v. Alabama*, 532 U.S. 1040, 121 S. Ct. 2005, 149 L. Ed. 2d 1007 (2001).

On May 7, 2002, James then commenced collateral review proceedings in the state system under Rule 32 of the Alabama Rules of Criminal Procedure. He was represented by counsel through these proceedings. The Court entered a final order denying post-conviction relief on October 28, 2004. James appealed the ruling to the Alabama Court of Criminal Appeals which affirmed. *See James v. State*, 61 So. 3d 332 (Ala. Crim. App. 2006). The Alabama Supreme Court

reversed and remanded the decision for additional proceedings to develop and review the issue of the ineffective assistance of counsel claims. *Ex parte James*, 61 So. 3d 352, 356 (Ala. 2009). Following remand, the Alabama Court of Criminal Appeals again affirmed the denial of the claims from the Rule 32 petition and denied the application for a rehearing. *See James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010). The Supreme Court of Alabama denied the petition for writ of certiorari on October 15, 2010 without opinion.

On October 29, 2010, James filed his federal habeas petition in the Northern District of Alabama and amended the petition on December 31, 2010. *See James v. Culliver*, Civ. Act. No. 10-S-2929, generally. The same counsel served as counsel in this proceeding. After careful review and with a detailed opinion, on September 30, 2014, the court denied his habeas petition and dismissed the petition. *Id.*, 2014 WL 4926178, 2014 U.S. Dist. LEXIS 139696. James' appeal of that judgment was affirmed by the Eleventh Circuit, *James v. Warden*, 957 F.3d 1184 (11th Cir. 2020), and his petition for writ of certiorari was denied by the United States Supreme Court on March 1, 2021. *James v. Raybon*, 141 S. Ct. 1463, 209 L. Ed. 2d 180 (2021). As a result, at this point, his conviction and sentence are final because he completed the direct appeal, state postconviction review, and federal habeas review.

On April 12, 2022, proceeding *pro se*, James filed a second and successive petition for writ of habeas corpus in this Court which was dismissed for lack of jurisdiction as an unauthorized successive petition. *James v. Raybon*, Civ. Act. No. 1:22-cv-152-JB, 2022 U.S. Dist. LEXIS 113260, 2022 WL 2308917 (S.D. Ala. June 27, 2022).

**B.    Current proceedings**

Once the conviction and sentence became final, on March 17, 2022, the State of Alabama ("the State") filed a motion to set his execution date with the Alabama Supreme Court. On June

7, 2022, the Alabama Supreme Court granted the State's motion and set the execution for July 28, 2022.[1]

On June 22, 2022, Plaintiff filed this case brought pursuant to 42 U.S.C. § 1983 as the first of several lawsuits pertaining to his upcoming execution.[2] In his present case, the complaint alleges only a few facts and claims. In sum, Plaintiff claims that the Defendant entered into an agreement with the Federal Defenders of the Middle District of Alabama to end a civil suit which allowed only the Federal Defender's clients to exercise an option to elect nitrogen hypoxia that was previously waived. *See* Doc. 1 at 4. Defendant incentivized these Federal Defender's clients by agreeing to not seek execution dates for those who signed a form created by the Federal Defenders which then created a protection for them that is unavailable to Plaintiff. *Id*. As a result, Defendant set James' execution date which he claims violates his due process and equal protection rights. He further states as facts that Defendant "entered into an agreement affording others similarly situated as the Plaintiff the opportunity to exercise a right that they waived while excluding the Plaintiff because of his representation." *Id*. at 5. Plaintiff requests the Court stay the pending execution to allow Plaintiff the right to make a fair and informed election regarding his method of execution. *Id*. at 7.

---

[1] Without commenting on his other cases at this point, the Court does take judicial notice of the Alabama Supreme Court's order dated June 7, 2020 which was provided by Plaintiff and Defendant in separate actions. *See James v. Raybon*, Civ. Act. No. 1:22-cv-252-TFM (S.D. Ala. 2002), Doc. 8-1 (provided by Defendant); *James v. Raybon*, Civ. Act. No. 1:22-cv-253-TFM (S.D. Ala. 2002), Doc. 1 at 14-15 (provided by Plaintiff).

[2] As of the date of this opinion, there are five additional cases filed since June 22, 2022: *James v. Fed. Def. of the Middle District of Ala.*, Civ. Act. No. 1:22-cv-242; *James v. Raybon*, Civ. Act. No. 1:22-cv-252; *James v. Raybon*, Civ. Act. No. 1:22-cv-253; *James v. Weller*, Civ. Act. No. 1:22-cv-270; and *James v. Pettway*, Civ. Act. No. 1:22-cv-271. This does not include the numerous *pro se* cases he previously filed in the last two years. *See, e.g. James v. Jefferson Cnty.*, Civ. Act. No. 1:22-cv-33; *James v. Raybon*, Civ. Act. No. 1:21-cv-437; *James v. Marshall*, Civ. Act. No. 1:21-cv-453; *James v. Raybon*, Civ. Act. No. 1:21-cv-450; *James v. Raybon*, Civ. Act. No. 1:22-cv-152; *James v. Raybon*, Civ. Act. No. 1:20-cv-299.

The Court granted his motion to proceed *in forma pauperis*, and construed the complaint as also containing a motion for preliminary injunction. *See* Doc. 4. Defendant was ordered to file a response to the motion for preliminary injunction on or before July 5, 2022. *Id*. On July 1, 2022, Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) which included a detailed response to the motion for preliminary injunction. *See* Doc. 8. The Court construed the motion as both a motion to dismiss and a response to the motion for preliminary injunction. *See* Doc. 9. Though briefing on the motion to dismiss is ongoing, the Court considers the request for a preliminary injunction ripe for the Court's review.

### III.   STANDARD OF REVIEW

The standard governing a stay of execution mirrors that for a preliminary injunction. *See Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011).

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). The party seeking the preliminary injunction bears the burden of establishing its entitlement to relief. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).

To obtain a preliminary injunction, the moving party must establish the following prerequisites: "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the

public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1262-63 (11th Cir. 2004); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (stating same four requirements). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org*, 788 F.3d at 1322 (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001)); *accord Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("A preliminary injunction is a drastic remedy and [the movant] bears the burden to clearly establish each of the four prerequisites."); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[G]ranting a preliminary injunction is the exception rather than the rule" and movant must clearly carry the burden of persuasion.). The moving party's failure to demonstrate a single element may defeat the request regardless of the party's ability to establish any of the other elements. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (failure to show irreparable injury); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (failure to establish substantial likelihood of success on the merits).

## IV. DISCUSSION AND ANALYSIS

### A. Backstory of Nitrogen Hypoxia in Alabama

Though the complaint and request for injunction are thin on facts, the Court is well familiar with the backdrop of the litigation relating to the election (or non-election) of nitrogen hypoxia as an alternative method of execution in the state of Alabama. To start, Alabama law provides that lethal injection is the default method of execution. ALA. CODE. § 15-18-82.1(a).

#### i. The Midazolam Litigation and Authorization of Nitrogen Hypoxia

Starting in 2012, several death row inmates filed nearly identical challenges to Alabama's

lethal injection protocol which were ultimately consolidated into a single case and captioned as *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW (M.D. Ala. 2012). In that litigation, the inmates proposed nitrogen hypoxia as an alternative execution method.

On March 22, 2018, the Alabama Legislation passed an amendment to the Alabama Code to add nitrogen hypoxia as an alternative to lethal injection in addition to the already existing alternative of electrocution established in 2002. *See* 2018 Alabama Laws Act 2018-353 (S.B. 272). Specifically, the Alabama Legislature amended Ala. Code §§ 15-18-82(a)-(b), 15-18-82.1(a)-(c), (f), (i)-(j) to encompass the addition of nitrogen hypoxia. The statute makes it clear that a death row inmate has one opportunity to select one of the alternative execution methods. ALA. CODE. § 15-18-82.1(b). That timeline is specifically set by the statute.

The amended code went into effect on June 1, 2018 which established the timing to make an election for nitrogen hypoxia as follows:

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date. If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

ALA. CODE. § 15-18-82.1(b)(2).

With the passage of this legislation, the addition of nitrogen hypoxia essentially mooted the ongoing litigation involved in the case *In re: Alabama Lethal Injection Protocol Litigation* as all the involved plaintiffs timely elected nitrogen hypoxia within the thirty-day window between

June 1-30, 2018. *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW, Docs. 427, 429. As a result, the consolidated action was dismissed without prejudice. *Id.*, Docs. 429, 430.

### ii. Distribution of election form by ADOC

Over the course of the litigation that spawned from the addition of nitrogen hypoxia as an execution method, the following facts have been established and are undisputed. On or about June 26, 2018, the Alabama Department of Corrections ("ADOC") distributed a nitrogen hypoxia election form to all death-sentenced inmates. *See Smith v. Dunn*, 568 F. Supp. 3d 1244 (M.D. Ala. 2021); *Woods v. Dunn*, Civ. Act. No. 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267, at *7, 2020 WL 1015763, at *3 (M.D. Ala. Mar. 2, 2020). The form was not drafted or created by ADOC or the State, but rather was drafted by an attorney in the Federal Defender's Office for the Middle District of Alabama. *Id.* During the thirty-day election period from June 1 to June 30, 2018, 48 inmates elected nitrogen hypoxia. *See Dunn v. Price*, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019).

### iii. Lack of Execution Protocol Resulting in No Executions for Nitrogen Hypoxia

When the Alabama Code was amended to add nitrogen hypoxia as a second alternative execution method, there was no protocol established for performing nitrogen hypoxia executions nor was there a deadline to create one. Throughout the course of the litigation relating to nitrogen hypoxia, the State has yet to develop such a protocol. As a result, the State has been unable to execute an inmate by nitrogen hypoxia. Meanwhile, the State has proceeded with the execution of death row inmates who have completed their appeals and who did not elect nitrogen hypoxia.

### B. James' Request for a Stay of Execution/Injunction

As noted by the Defendant, the complaint is thin on fleshed out allegations. However, as Plaintiff proceeds *pro se*, the Court holds him to less stringent standards that formal pleadings

drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, while we construe a *pro se* litigant's pleadings liberally, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). It does appear clear based on the allegations that Plaintiff argues that the State has violated the Fourteenth Amendment's equal protection clause in two ways: (1) by setting his execution date while other inmates with exhausted appeals who elected nitrogen hypoxia as their method of execution have not had their execution dates set and (2) by treating him differently from the plaintiff-inmates in the *In re: Alabama Lethal Injection Protocol Litigation*. Both claims have been previously litigated by other death row inmates. *See, e.g., Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019) *cert. denied sub nom. Price v. Dunn*, 139 S. Ct. 1542 (2019); *Woods*, Civ. Act. No. 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267, at *17-28, 2020 WL 1015763, at *6-10. Consequently, this is not new ground for the Court.

At this stage the Court is not addressing the motion to dismiss, because Defendant conflates the motion to dismiss with the response for a preliminary injunction, the Court will begin with the standing argument Defendant asserts both for dismissal and the denial of a preliminary injunction. Additionally, the Court notes it addresses the issue of a preliminary injunction because the matter is already fully briefed through the Plaintiff's original request and the Defendant's response, while the Motion to Dismiss is still in the process of being briefed. The Court further notes that the compressed timeline is necessary because of the upcoming execution date.

      **i.**    **Standing**

Defendant asserts that Plaintiff lacks standing which is a jurisdictional issue and must be

addressed prior to other matters. *See* Doc. 8 at 8-13.

To establish Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1263 (11th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)). Put in more detail, the Supreme Court states that to invoke federal jurisdiction a plaintiff bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338, 136 S. Ct. at 1547 (citations omitted). All three prongs must be met and failure of any of them results in a lack of standing. In the case at hand, the third prong of redressability fails.

Defendant bypasses the first two prongs of injury and traceability without addressing either way and skips to redressability. "Redressability simply requires a plaintiff to seek a 'remedy that is likely to redress [the] injury' which is fairly traceable to the challenged conduct." *Smith v. Comm'r Ala. Dep't of Corr.*, 2021 U.S. App. LEXIS 31064, at *10, 2021 WL 4817748, at *4 (11th Cir. Oct. 15, 2021) (quoting *Uzuegbunam v. Preczewski*, --- U.S. ---, 141 S. Ct. 792, 797, 209 L. Ed. 2d 94 (2021)). Defendant asserts that there cannot be redressability from this Defendant because the statute of one crafted by the Alabama Legislature and Defendant lacks the ability to give Plaintiff "another bite at the election apple" on the thirty day election window. *See* Doc. 8 at 10-13. The Court finds that this argument fails and borders on disingenuous in that Defendant fails to note or discuss that the Eleventh Circuit previously addressed and <u>rejected</u> a substantially similar argument in its reversal of *Smith v. Comm'r, Ala., Dep't of Corr.*, 2021 U.S. App. LEXIS

31064, 2021 WL 4817748 (11th Cir. Oct. 15, 2021), which is also a death penalty case relating to the nitrogen hypoxia election issue. While the *Smith* case may not be a published opinion that is binding precedent, the Defendant still has an obligation to disclose contrary case law to its argument.

The Eleventh Circuit noted that "when reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiff would be successful in his claim." *Smith*, 2021 U.S. App. LEXIS 31064 at *6-7, 2021 WL 4817748 at *2 (citing *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016)). The Defendant makes this assertion with regard to both dismissal and the preliminary injunction. Yet, even "[a]t the dismissal stage of litigation, the court reviewing standing may not make determinations on the merits and must assume that the plaintiff will succeed on his claims." *Id.*, 2021 U.S. App. LEXIS 31064 at *5, 2021 WL 4817748 at *2 (citing *Culverhouse*, 813 F.3d at 994). In sum, for the purposes of <u>standing</u>, the Court must assume Plaintiff will win.

When looking to the elements of standing, the Court looks to all three elements. Much like the Plaintiff in the *Smith* case, the Court finds that all three elements are met. First with injury in fact, Plaintiff asserts that he was not given full information regarding making the election on whether or to use nitrogen hypoxia because he was not aware that those who elected (i.e., Federal Defender's clients) would not be scheduled for execution by the Defendant which results in him being scheduled for execution while those who elected nitrogen hypoxia remain unscheduled. That violation results in him being treated differently than similarly situated death-row inmates – who, in essence, get to "live longer" than those (like Plaintiff) who did not elect nitrogen hypoxia. Plaintiff therefore sufficiently alleges an injury in fact for the standing inquiry.

Next, the Court proceeds to traceability (or causation) as the second element. Traceability requires Plaintiff to show that his injury (the impending execution by lethal injection) is "fairly traceable to the challenged action" (i.e., the failure to adequately inform Plaintiff that his election or non-election of nitrogen hypoxia could impact the timeframe for which he might be scheduled for execution). Again, just like in *Smith*, it is not for the Court to decide the merits of the issue, but to simply assume that if Plaintiff succeeds in his Fourteenth Amendment claims, that he has sufficiently alleged his injury is traceable to or caused by the challenged actions or inactions of the Defendant. Defendant acted by requesting a date be set for his execution. Moreover, without getting into the merits of the issue for the purposes of standing-only, the Defendant also takes action by setting dates for death-row inmates who did not elect nitrogen hypoxia while waiting to schedule those who did elect the alternative. Therefore, the Court finds for the purposes of standing that Plaintiff meets the second element.

Turning to the third and final element (redressability), a plaintiff must seek a "remedy that is likely to redress [the] injury" which is fairly traceable to the challenged conduct. *Id.*, 2021 U.S. App. LEXIS 31064 at *10, 2021 WL 4817748 at *4 (quoting *Uzuegbunam*, --- U.S. at ---, 141 S. Ct. at 797). This is where Defendant fails to disclose that the Eleventh Circuit has already made a specific finding that is contrary to the position they assert in the context of a death penalty appeal similar to the one at hand.

In *Smith*, the Eleventh Circuit states the following:

> Smith requests that Defendants redress his injury by reopening the 30-day statutory opt-in period to allow him an opportunity to understand and complete the form with the benefit of the accommodations he was previously denied. Defendants counter that the statute does not grant them this power. But the ability of a federal court to fashion effective relief for a violation of federal law is not limited by what state law permits. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 106, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945) ("A federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it.").

> We find that "a favorable decision" from the court in this case "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303-04 (11th Cir. 2011). Because this is all that is required to show redressability, Smith has satisfied this element.

*Smith*, 2021 U.S. App. LEXIS 31064 at *10-11, 2021 WL 4817748 at *4. The case involving Plaintiff James is no different. If Plaintiff were successful, then just like the Eleventh Circuit notes in *Smith*, clearly the Court could craft an equitable remedy of reopening the thirty-day election period. Therefore, the third element is also satisfied. As a result, Plaintiff has standing to bring this suit against the Defendant.[3]

### ii. Preliminary Injunction Analysis

Now that the Court has determined standing exists, it may continue as to the issue and hand. The only inquiry before the Court at this stage of the proceedings is whether James is entitled to a stay of his execution scheduled for July 28, 2022. As previously noted, the standard governing a stay of execution mirrors that for a preliminary injunction. Therefore, the Court looks to the four elements: (1) a substantial likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest. Additionally, in a case where the party opposing the preliminary injunction is the government, the third and fourth elements merge. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (explaining that "where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest"). All elements must

---

[3] The Court cautions Defendant that if it intends to further assert this argument in other similar cases (whether involving James or another death row inmate), it must disclose contrary case law to the Court or risk being in violation of the oath of candor to the court.

be met or the request for an injunction fails. Moreover, "'the first and most important question' regarding a stay of execution is whether the petitioner is substantially likely to succeed on the merits of his claims." *Price*, 920 F.3d at 1323 (quoting *Jones v. Comm'r. Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016)).

The issues raised by James are virtually identical to those raised in *Price* which is a published case from the Eleventh Circuit and therefore binds this Court to the same analysis to the extent it addresses the same issues. *See Price*, 920 F.3d 1317.[4] Further, while not binding, the Court also finds the analysis by a sister court in the Middle District of Alabama in *Woods* to be persuasive as it relates to the same claims under the Equal Protection Clause. *Woods*, 2020 U.S. Dist. LEXIS 35267, 2020 WL 1015763.

As discussed above, Ala. Code § 15-18-82.1(b)(2) establishes the timeline for election.

> "The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date."

ALA. CODE § 15-18-82.1(b)(2). Neither the Plaintiff nor the Defendant specifically identified the

---

[4] The Court notes that the Eleventh Circuit issued its published opinion on April 10, 2019 affirming the district court and initially denied the emergency motion to stay the execution. 920 F.3d 1317. The next day, the plaintiff/appellant filed a new motion for preliminary injunction with the same arguments but additional supporting evidence. *See Price v. Comm'r, Ala. Dep't of Corr.*, No. 19-11268-P, 2019 U.S. App. LEXIS 10826, 2019 WL 1591475 (11th Cir. Apr. 11, 2019). There was a debate about the jurisdiction of both the district court and the court of appeals. However, the district court concluded it did have jurisdiction and issued a stay of execution for 60 days. The Eleventh Circuit agreed there were jurisdictional questions and therefore also stayed the execution until further order of the Court. On April 12, 2019, the Supreme Court vacated the stay. *Dunn v. Price*, --- U.S. ---, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019). As a result, the original *Price* opinion issued by the Eleventh Circuit was never rescinded, reversed, or otherwise set aside. Therefore, as a published opinion, this Court is bound by the analysis. However, even if it were not binding, the Court would still find the analysis to be applicable in this case.

date on which the Supreme Court issued the certificate of judgment in James' case and in the Court's research, it found two separate Certificate of Judgments referencing the Plaintiff's criminal case (Jefferson Circuit Court CC-95-4747.62; Criminal Appeals CR-18-0487). The first is dated November 17, 2017 and the second is dated February 21, 2020. Because there is conflict as to the exact date in this case, the Court cannot take judicial notice of the date of the Certificate of Judgment for the purposes of the statutory trigger period on making an election. Moreover, it is incumbent upon the parties to provide the specific information. Plaintiff makes no reference to the date in his original complaint filed on June 22, 2022 and only references that his election period should be reopened so he can make "a fair and informed election." *See* Doc. 1 generally. Defendant also makes no reference to the specific date in its motion to dismiss/response to preliminary injunction but merely states "[James'] conviction and sentence are final because he has completed his direct appeal, state postconviction review, and federal habeas review." *See* Doc. 8 at 1-2.

Therefore, it is not clear precisely when the trigger date was for the purposes of the election period. However, there is no allegation or information before the Court that indicates that the thirty (30) day window has not passed. Therefore, for the purposes of this analysis, the Court will analyze it under both the above dates as ultimately, it is a distinction without a difference.

The first Certificate of Judgment is dated November 17, 2017, which would mean that James would have been required under the statute to make his election within thirty days of June 1, 2018 (i.e., June 1-30, 2018), and the second Certificate of Judgment is dated February 21, 2020, which would mean James should have made his election within thirty days of that date (i.e., February 21, 2020 through March 22, 2020). It is clear from the allegations that James did not make his election during the required thirty-day timeframe since he requests that it be reopened,

nor does he make any allegation that he was unaware of the timeframe. Rather, Plaintiff merely asserts he was not able to make an informed decision and was unaware he would be treated differently than the death-row inmates involved in *In re: Alabama Lethal Injection Protocol Litigation* in that those who did not elect nitrogen hypoxia as their method of execution would have their dates of execution set before those who did make the alternative election. He requests the election period be reopened so he can make a fair and informed election. He also seemingly asserts that the Federal Defender clients were permitted a re-opened period to make their election outside of the statutory period, but provides no specific facts to support that assertion. Moreover, that allegation has been raised previously in other similar cases and was also rejected as factually untrue.

The Court also notes that the need for an expedited process in adjudicating these constitutional claims was avoidable because the case could have been brought much earlier. Instead, Plaintiff waited until after his execution date was set to file his constitutional claims relating to the election of nitrogen hypoxia which left the Court will little time to develop a more complete record. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Gomez v. United States Dist. Court for N. Dist. of Cal.,* 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992); *see also Dunn*, --- U.S. ---, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019) (quoting *Gomez*); *Hill v. McDonough*, 547 U. S. 573, 584, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006) (equity weighs against a stay when "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay"). Further, a preliminary injunction is considered "an extraordinary and drastic remedy," and James bears "the burden of persuasion" to clearly establish each of these elements. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks omitted).

Notwithstanding the expedited nature of this case, the Court has carefully considered the parties' positions and the record before it for the preliminary injunction.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1989) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). To state an Equal Protection claim, a plaintiff must (1) "show that the State will treat him disparately from other similarly situated persons," (2) if a law treats individuals differently on the basis of a suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny, or (3) otherwise "must show that the disparate treatment is not rationally related to a legitimate government interest." *Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (internal modifications and citations omitted). A classification not involving fundamental rights or discriminating against a suspect class "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Price*, 920 F.3d at 1325.

> As noted by the *Woods* decision
>
> > [T]he State characterizes the two groups of death-sentenced inmates in Alabama as those who elected nitrogen hypoxia and those who did not. It is apparently undisputed that the State had a custom of moving for executions when an inmate's appeals are exhausted and now continues to schedule executions when an inmate's appeals are exhausted, but does not move for an execution date for an inmate at this time if the inmate elected nitrogen hypoxia as the method of execution. The State explains that the ADOC cannot, at this time, execute inmates who elected nitrogen hypoxia because there is no finalized protocol for that method of execution, but can execute by lethal injection those inmates who did not timely elect nitrogen hypoxia.
>
> *Woods*, Civ. Act. No., 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267 at *20, 2020 WL 1015763

at*7. Moreover, the Eleventh Circuit held in *Price*, that inmates who elected nitrogen hypoxia are not similarly situated to inmates who did not so-elect. *Price*, 920 F.3d at 1325. Therefore, for purposes of the scheduling of his execution by the State (Defendant), the *Price* court's holding means that James, as an inmate who did not elect nitrogen hypoxia and whose appeals are exhausted, is not similarly situated in all material respects to inmates who did timely elect nitrogen hypoxia and whose appeals are exhausted. *Id*. The *Price* court alternatively held that

> even if [plaintiff] were similarly situated to other death-row inmates, he cannot establish an equal-protection violation because he was treated exactly the same as the other inmates. Every inmate was given thirty days within which to elect nitrogen hypoxia as their method of execution. Ironically, if the State did allow [plaintiff] to make the belated election he seeks, it would be treating him differently than other death-row inmates who were not afforded the same benefit.

*Id*. This satisfies rational basis review. *Id*. (holding that the rational basis for the thirty-day election rule is the efficient and orderly use of state resources in planning and preparing for executions).

Therefore, as this Court is bound by the Eleventh Circuit's analysis in *Price* and alternatively finds that the analysis would still be applicable even if not binding, James' equal protection claims fail as a matter of law and he cannot succeed on the merits which precludes the issuance of a stay of execution by preliminary injunction. As a result, the Court need not analyze any of the remaining elements.

## V.   CONCLUSION

Based on the above, Plaintiff has not carried his burden of persuasion for an injunction to issue on a stay of execution. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. 1) is **DENIED**.

The Clerk of Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Plaintiff by overnight mail. Further, Defense Counsel is **ORDERED** to send a copy to the

Warden by either electronic mail or facsimile with the instructions that a copy of this Memorandum Opinion and Order be given to the Plaintiff immediately upon receipt.

    **DONE** and **ORDERED** this 11th day of July 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE
