**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JOE NATHAN JAMES, JR.        )
AIS 0000Z610,             )
                        )
     Plaintiff,          )
                        )
v.                      )    CIV. ACT. NO.  1:22-cv-241-TFM-N
                        )
STEVE MARSHALL,        )
                        )
     Defendant.       )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's *Motion to Dismiss Plaintiff's Complaint* (Doc. 8, filed 7/1/22) and Plaintiff's response in opposition (Doc. 11, filed 7/11/22).  Defendant did not file a reply by the deadline set by the Court.  As such,  the motion is ripe for the Court's review.  After the Court considered the motion and response, the Court **DENIES** the motion to dismiss (Doc. 8) based on the current matters before the Court, which are addressed in further detail below.

### I.    PARTIES AND JURISDICTION

Plaintiff is Joe Nathan James, Jr. ("Plaintiff" or "James"), an Alabama Inmate whose execution is set for July 28, 2022.  He filed a complaint pursuant to 42 U.S.C. § 1983 against Defendant Steve Marshall in his official capacity as the Attorney General of the State of Alabama. The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.    PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.    Capital Litigation History

The history of the crime is discussed in great length in the September 30, 2014 opinion

issued in James' habeas appeal.   *See James v. Culliver*, Civ. Act. No. 10-S-2929, 2014 WL

4926178, 2014 U.S. Dist. LEXIS 139696 (N.D. Ala. Sept. 30, 2014).   In short summary here,

James was convicted of murdering his former girlfriend, Faith Hall, after breaking into the

apartment where she was located and shooting her several times in the head, chest, and abdomen.

He was tried twice and found guilty both times.   The first conviction was reversed due to the

judicial error in the admission of certain evidence.   However, after retrial, he was again convicted

of capital murder on June 16, 1999.   The jury then returned a sentencing verdict recommendation

by unanimous vote that James be sentenced to death.   On July 9, 1999, the trial judge conducted

the formal sentencing hearing, adopted the sentencing recommendation, and sentenced James to

death.   James appealed the second conviction and sentence, which were affirmed by the Alabama

Court of Criminal Appeals on April 28, 2000.   *See James v. State*, 788 So. 2d 185 (Ala. Crim. App.

2000).   The Alabama Supreme Court denied certiorari on December 15, 2000, and the United

States Supreme Court did the same on May 21, 2001.   *See Ex parte James*, No. 1991959, 2000

Ala. LEXIS 1511 (Ala. Dec. 15, 2000); *James v. Alabama*, 532 U.S. 1040, 121 S. Ct. 2005, 149

L. Ed. 2d 1007 (2001).

On May 7, 2002, James then commenced collateral review proceedings in the state system

under Rule 32 of the Alabama Rules of Criminal Procedure.   He was represented by counsel

through these proceedings.   The Court entered a final order denying post-conviction relief on

---

[1] The Court previously provided this information in its Memorandum Opinion and Order denying
the request for a preliminary injunction/stay of execution.  *See* Doc. 10.

October 28, 2004. James appealed the ruling to the Alabama Court of Criminal Appeals, which affirmed. *See James v. State*, 61 So. 3d 332 (Ala. Crim. App. 2006). The Alabama Supreme Court reversed and remanded the decision for additional proceedings to develop and review the issue of the ineffective assistance of counsel claims. *Ex parte James*, 61 So. 3d 352, 356 (Ala. 2009). Following remand, the Alabama Court of Criminal Appeals again affirmed the denial of the claims from the Rule 32 petition and denied the application for a rehearing. *See James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010). The Supreme Court of Alabama denied the petition for writ of certiorari on October 15, 2010 without opinion.

On October 29, 2010, James filed his federal habeas petition in the Northern District of Alabama and amended the petition on December 31, 2010. *See James v. Culliver*, Civ. Act. No. 10-S-2929, generally. The same counsel served as counsel in this proceeding. After careful review and with a detailed opinion, on September 30, 2014, the court denied his habeas petition and dismissed the petition. *Id*., 2014 WL 4926178, 2014 U.S. Dist. LEXIS 139696. James' appeal of that judgment was affirmed by the Eleventh Circuit, *James v. Warden*, 957 F.3d 1184 (11th Cir. 2020), and his petition for writ of certiorari was denied by the United States Supreme Court on March 1, 2021. *James v. Raybon*, 141 S. Ct. 1463, 209 L. Ed. 2d 180 (2021). As a result, his conviction and sentence are final because he completed the direct appeal, state post-conviction review, and federal habeas review.

On April 12, 2022, proceeding *pro se*, James filed a second and successive petition for writ of habeas corpus in this Court, which was dismissed for lack of jurisdiction as an unauthorized successive petition. *James v. Raybon*, Civ. Act. No. 1:22-cv-152-JB, 2022 U.S. Dist. LEXIS 113260, 2022 WL 2308917 (S.D. Ala. June 27, 2022).

**B.      Current proceedings**

Once the conviction and sentence became final, on March 17, 2022, the State of Alabama ("the State") filed a motion to set his execution date with the Alabama Supreme Court.  On June 7, 2022, the Alabama Supreme Court granted the State's motion and set the execution for July 28, 2022.

On June 22, 2022, Plaintiff filed this case brought pursuant to 42 U.S.C. § 1983 as the first of several lawsuits pertaining to his upcoming execution.[2]  In his present case, the complaint alleges only a few facts and claims.  In sum, Plaintiff claims that the Defendant entered into an agreement with the Federal Defenders of the Middle District of Alabama to end a civil suit, which allowed only the Federal Defender's clients to exercise an option to elect execution by nitrogen hypoxia that was previously waived.  *See* Doc. 1 at 4.  Defendant incentivized these Federal Defender's clients by agreeing to not seek execution dates for those who signed a form that was created by the Federal Defenders, which then created a protection for them that is unavailable to Plaintiff.  *Id*.  As a result, Defendant set James' execution date, which he claims violates his due process and equal protection rights.  He further states as facts that Defendant "entered into an agreement affording others similarly situated as the Plaintiff the opportunity to exercise a right that they waived while excluding the Plaintiff because of his representation." *Id*. at 5.  Plaintiff requests the Court stay the pending execution to allow Plaintiff the right to make a fair and informed

---

[2] As of the date of this opinion, there were five additional cases filed since June 22, 2022: *James v. Fed. Def. of the Middle District of Ala.*, Civ. Act. No. 1:22-cv-242 (S.D. Ala.); *James v. Raybon*, Civ. Act. No. 1:22-cv-252 (S.D. Ala.); *James v. Raybon*, Civ. Act. No. 1:22-cv-253 (S.D. Ala.); *James v. Weller*, Civ. Act. No. 1:22-cv-270 (S.D. Ala.); and *James v. Pettway*, Civ. Act. No. 1:22-cv-271 (S.D. Ala.).  The Court reviewed, addressed, and dismissed each case within the last week. This also does not include the numerous *pro se* cases he previously filed in the last two years. *See, e.g. James v. Jefferson County*, Civ. Act. No. 1:22-cv-33; *James v. Raybon*, Civ. Act. No. 1:21-cv-437; *James v. Marshall*, Civ. Act. No. 1:21-cv-453; *James v. Raybon*, Civ. Act. No. 1:21-cv-450; *James v. Raybon*, Civ. Act. No. 1:22-cv-152; *James v. Raybon*, Civ. Act. No. 1:20-cv-299.

election regarding his method of execution.  *Id*. at 7.

The Court granted his motion to proceed *in forma pauperis* and construed the complaint as also containing a motion for preliminary injunction.  *See* Doc. 4.  Defendant was ordered to file a response to the motion for preliminary injunction on or before July 5, 2022.  *Id*.  On July 1, 2022, Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which included a detailed response to the motion for preliminary injunction.  *See* Doc. 8.  The Court construed the motion as both a motion to dismiss and a response to the motion for preliminary injunction.  *See* Doc. 9.  The Court denied the request for a preliminary injunction/stay of execution on July 11, 2022.  *See* Doc. 10.

Defendant argues in its motion to dismiss that (1) Plaintiff's complaint fails to state a claim for which relief may be granted, (2) Plaintiff lacks standing, and (3) Plaintiff's claims are time barred.  *See* Doc. 8.  Plaintiff timely filed his response in opposition to the motion to dismiss.  *See* Doc. 11.  Defendant did not file a reply to the response by the deadline that was established by the Court.  *See* Doc. 9 and Docket Generally.[3]

### III.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted.  *See* FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

---

[3] The Court indicated Defendant would have three (3) calendar days to file any reply it wished to file.  The Plaintiff's response was docketed on July 12, 2022, though the date reflects the day when the Court received the response in the mail (July 11, 2022).  As such, the deadline would have been three (3) days from July 12 since that is when the electronic notification would have been sent to the Defendant from the docketing of the response.  Regardless, the Court waited until today's date to conclude that no reply would be filed.  Thus, the Court concludes that Defendant did not intend to file a reply.

S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955)). Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence,* 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss). "When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto." *Thaeter v. Palm Beach Cty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam)); *see also*

*Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## IV.    DISCUSSION AND ANALYSIS

### A.    Backstory of Nitrogen Hypoxia in Alabama

Though the complaint and request for injunction are thin on facts, the Court is well familiar with the backdrop of the litigation relating to the election (or non-election) of nitrogen hypoxia as an alternative method of execution in the state of Alabama.  To start, Alabama law provides that lethal injection is the default method of execution.  ALA. CODE. § 15-18-82.1(a).

#### i.    The Midazolam Litigation and Authorization of Nitrogen Hypoxia

Starting in 2012, several death-row inmates filed nearly identical challenges to Alabama's lethal injection protocol, which were ultimately consolidated into a single case and captioned as *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW (M.D. Ala.).  In that litigation, the inmates proposed nitrogen hypoxia as an alternative execution method.

On March 22, 2018, the Alabama Legislature passed an amendment to the Code of Alabama, 1975, to add nitrogen hypoxia as an alternative to lethal injection in addition to the already existing alternative of electrocution that was established in 2002.  *See* 2018 Alabama Laws Act 2018-353 (S.B. 272).  Specifically, the Alabama Legislature amended Ala. Code §§ 15-18-82(a)-(b), 15-18-82.1(a)-(c), (f), (i)-(j) to encompass the addition of nitrogen hypoxia.  The statute makes it clear that a death-row inmate has one opportunity to select one of the alternative execution methods.  ALA. CODE. § 15-18-82.1(b).  That timeline is specifically set by the statute.

The amended code went into effect on June 1, 2018, which established the timing to make

an election for nitrogen hypoxia as follows:

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date. If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

ALA. CODE § 15-18-82.1(b)(2).

With the passage of this legislation, the addition of nitrogen hypoxia essentially mooted the ongoing litigation involved in the case *In re: Alabama Lethal Injection Protocol Litigation* as all the involved plaintiffs timely elected nitrogen hypoxia within the thirty-day window between June 1-30, 2018. *In re: Alabama Lethal Injection Protocol Litigation*, Civ. Act. No. 2:12-cv-316-WKW, Docs. 427, 429 (M.D. Ala.). As a result, the consolidated action was dismissed without prejudice. *Id*., Docs. 429, 430.

### ii. Distribution of Election Form by ADOC

Over the course of the litigation that spawned from the addition of nitrogen hypoxia as an execution method, the following facts have been established and are undisputed. On or about June 26, 2018, the Alabama Department of Corrections ("ADOC") distributed a nitrogen hypoxia election form to all death-sentenced inmates. *See Smith v. Dunn*, 568 F. Supp. 3d 1244 (M.D. Ala. 2021); *Woods v. Dunn*, Civ. Act. No. 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267, at *7, 2020 WL 1015763, at *3 (M.D. Ala. Mar. 2, 2020). The form was not drafted or created by ADOC or the State, but rather was drafted by an attorney in the Federal Defender's Office for the Middle District of Alabama. *Id*. During the thirty-day election period from June 1 to June 30, 2018, forty-

eight (48) inmates elected nitrogen hypoxia.  *See Dunn v. Price*, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019).

### iii.    Lack of Execution Protocol Resulting in No Executions for Nitrogen Hypoxia

When the Alabama Code was amended to add nitrogen hypoxia as a second alternative execution method, there was no protocol established for performing nitrogen hypoxia executions nor was there a deadline to create one.  Throughout the course of the litigation relating to nitrogen hypoxia, the State has yet to develop such a protocol.  As a result, the State has been unable to execute an inmate by nitrogen hypoxia.  Meanwhile, the State has proceeded with the execution of death-row inmates who have completed their appeals and did not elect nitrogen hypoxia.

## B.    James' Complaint / Request for Stay of Execution

As noted by the Defendant, the complaint is thin on fleshed out allegations.  However, as Plaintiff proceeds *pro se*, the Court holds him to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  However, while we construe a *pro se* litigant's pleadings liberally, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).  It does appear clear, based on the allegations that Plaintiff argues, that the State has violated the Fourteenth Amendment's equal protection clause in two ways: (1) by setting his execution date while other inmates with exhausted appeals who elected nitrogen hypoxia as their method of execution have not had their execution dates set and (2) by treating him differently from the plaintiff-inmates in the *In re: Alabama Lethal Injection Protocol Litigation*.  Both claims have been previously litigated by other death-row inmates.  *See, e.g., Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317,

1325 (11th Cir. 2019), *cert. denied sub nom. Price v. Dunn*, 139 S. Ct. 1542 (2019); *Woods*, Civ.

Act. No. 2:20-cv-58-ECM, 2020 U.S. Dist. LEXIS 35267, at *17-28, 2020 WL 1015763, at *6-

10.  Consequently, this is not new ground for the Court.

On July 11, 2022, the Court previously addressed the request for a preliminary injunction/stay of execution.  *See* Doc. 10.  The Court now also has the benefit of Plaintiff's response (though styled as a Reply) to the Motion to Dismiss.  *See* Doc. 11.  Plaintiff states he was unaware that a certificate of judgment had been issued affirming his conviction and death sentence. *See id.* at 2.  He notes that as late as 2020, Plaintiff had a petition in the Eleventh Circuit Court of Appeals challenging his conviction and sentence and in 2021 he petitioned the United States Supreme Court for a Writ of Certiorari.  He further lists additional legal challenges that he brought in 2022.  *Id*. at 3.  Next, Plaintiff challenges the Order issued by the Alabama Supreme Court setting his date of execution.  *Id*.  Third, Plaintiff states that the election of nitrogen hypoxia made by the fifty or so inmates was not timely despite Defendant's assertions.  *Id*.  He states their elections were made after the July 11, 2018 dismissal of the *In re: Alabama Lethal Injection Protocol Litigation*.  *Id*.  He also seems to indicate that whatever election those inmates made was nonbinding because they were not timely, he indicates Defendant nonetheless accepted the election, which further meant those who elected nitrogen hypoxia will not yet be executed because of the "deal" struck between the Federal Defendants and Defendant.  *Id*.  He argues that "knowing the election was being made available is one thing, but knowing that the Defendant had agreed not to seek execution dates for those who elected until the facility and protocol was in place was everything," which denied Plaintiff the ability to make an informed choice.  *Id*. at 4.

    **i.**      **Standing**

The Court already addressed the question of standing in its prior Memorandum Opinion

and Order denying the preliminary injunction.  *See* Doc. 10.  However, as it is part of the motion to dismiss, the Court repeats the analysis here.

To establish Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability.  *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1262 (11th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)).  Put in more detail, the Supreme Court states that to invoke federal jurisdiction a plaintiff bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision.  *Spokeo*, 578 U.S. at 338, 136 S. Ct. at 1547 (citations omitted).  All three prongs must be met and the failure to prove any of them results in a lack of standing.  In the case at hand, the third prong of redressability fails.

Defendant bypasses the first two prongs of injury and traceability without addressing either way and skips to redressability.  "Redressability simply requires a plaintiff to seek a 'remedy that is likely to redress [the] injury' which is fairly traceable to the challenged conduct."  *Smith v. Comm'r Ala. Dep't of Corr.*, 2021 U.S. App. LEXIS 31064, at *10, 2021 WL 4817748, at *4 (11th Cir. Oct. 15, 2021) (quoting *Uzuegbunam v. Preczewski*, --- U.S. ---, 141 S. Ct. 792, 797, 209 L. Ed. 2d 94 (2021)).  Defendant asserts that Plaintiff's requested remedy is not redressable because the election statute was crafted by the Alabama Legislature and Defendant lacks the ability to give Plaintiff "another bite at the election apple" on the thirty-day election window.  *See* Doc. 8 at 10-13.  The Court finds that this argument fails and borders on disingenuous in that Defendant fails to note or discuss that the Eleventh Circuit previously addressed and <u>rejected</u> a substantially similar

argument in its reversal of *Smith v. Comm'r, Ala., Dep't of Corr.*, 2021 U.S. App. LEXIS 31064, 2021 WL 4817748 (11th Cir. Oct. 15, 2021), which is also a death penalty case relating to the nitrogen hypoxia election issue. While the *Smith* case may not be a published opinion that is binding precedent, the Defendant still has an obligation to disclose contrary case law to its argument especially when it comes from the appellate court for this district.

The Eleventh Circuit noted that "when reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiff would be successful in his claim." *Smith*, 2021 U.S. App. LEXIS 31064, at *6-7, 2021 WL 4817748, at *2 (citing *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016)). Defendant makes this assertion with regard to both dismissal and the preliminary injunction. Yet, even "[a]t the dismissal stage of litigation, the court reviewing standing may not make determinations on the merits and must assume that the plaintiff will succeed on his claims." *Id.*, 2021 U.S. App. LEXIS 31064, at *5, 2021 WL 4817748, at *2 (citing *Culverhouse*, 813 F.3d at 994). In sum, for the purposes of <u>standing</u>, the Court must assume Plaintiff will win.

When looking to the elements of standing, the Court looks to all three (3) elements. Much like the plaintiff in the *Smith* case, the Court finds that all three (3) elements are met. First with injury in fact, Plaintiff asserts that he was not given full information regarding making the election on whether to use nitrogen hypoxia because he was not aware that those who elected (i.e., Federal Defender's clients) would not be scheduled for execution by the Defendant, which results in him being scheduled for execution while those who elected nitrogen hypoxia remain unscheduled. That violation results in him being treated differently than similarly situated death-row inmates – who, in essence, get to "live longer" than those (like Plaintiff) who did not elect nitrogen hypoxia.

Plaintiff, therefore, sufficiently alleges an injury in fact for the standing inquiry.

Next, the Court proceeds to traceability (or causation) as to the second element. Traceability requires Plaintiff to show that his injury (the impending execution by lethal injection) is "fairly traceable to the challenged action" (i.e., the failure to adequately inform Plaintiff that his election or non-election of nitrogen hypoxia could impact the timeframe when he might be scheduled for execution). Again, just like in *Smith*, it is not for the Court to decide the merits of the issue, but to simply assume that if Plaintiff succeeds in his Fourteenth Amendment claims, that he has sufficiently alleged his injury is traceable to, or caused by, the challenged actions or inactions of Defendant. Defendant acted by requesting a date be set for his execution. Moreover, without getting into the merits of the issue for the purposes of standing only, the Defendant also takes action by setting dates for death-row inmates who did not elect nitrogen hypoxia while waiting to schedule those who did elect the alternative. Therefore, the Court finds for the purposes of standing that Plaintiff meets the second element.

Turning to the third and final element (redressability), a plaintiff must seek a "remedy that is likely to redress [the] injury," which is fairly traceable to the challenged conduct. *Id.*, 2021 U.S. App. LEXIS 31064, at *10, 2021 WL 4817748, at *4 (quoting *Uzuegbunam*, --- U.S. at ---, 141 S. Ct. at 797). This is where Defendant fails to disclose that the Eleventh Circuit has already made a specific finding that is contrary to the position that they assert in the context of a death penalty appeal that is similar to the one at hand.

In *Smith*, the Eleventh Circuit states the following:

> Smith requests that Defendants redress his injury by reopening the 30-day statutory opt-in period to allow him an opportunity to understand and complete the form with the benefit of the accommodations he was previously denied. Defendants counter that the statute does not grant them this power. But the ability of a federal court to fashion effective relief for a violation of federal law is not limited by what state law permits. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 106, 65 S. Ct. 1464, 89 L.

Ed. 2079 (1945) ("A federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it.").

We find that "a favorable decision" from the court in this case "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303-04 (11th Cir. 2011). Because this is all that is required to show redressability, Smith has satisfied this element.

*Smith*, 2021 U.S. App. LEXIS 31064, at *10-11, 2021 WL 4817748, at *4. The case involving Plaintiff James is no different. If Plaintiff were successful, then just like the Eleventh Circuit notes in *Smith*, clearly the Court could craft an equitable remedy of reopening the thirty-day election period. Therefore, the third element is also satisfied. As a result, Plaintiff has standing to bring this suit against Defendant.[4]

Now that the Court has determined standing exists, it may continue as to the other arguments asserted in the motion to dismiss

### ii.    Claims are Time Barred and Failure to State a Claim

Though these two (2) reasons are asserted separately, in essence, they both pertain to the timeframe for Plaintiff to elect execution by nitrogen hypoxia.

As discussed above, Ala. Code § 15-18-82.1(b)(2) establishes the timeline for election.

The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.

ALA. CODE § 15-18-82.1(b)(2). Neither the Plaintiff nor the Defendant specifically identified the date when the Supreme Court issued the certificate of judgment in James' case, and in the Court's

---

[4] The Court cautions Defendant that if it intends to further assert this argument in other similar cases (whether involving James or another death-row inmate), it must disclose contrary case law to the Court or risk being in violation of the oath of candor to the court.

research, it found two separate Certificate of Judgments referencing the Plaintiff's criminal case (Jefferson Circuit Court CC-95-4747.62; Criminal Appeals CR-18-0487).   The first is dated November 17, 2017, and the second is dated February 21, 2020.  Because there is conflict as to the exact date in this case, the Court cannot take judicial notice of the date of the Certificate of Judgment for the purposes of the statutory trigger period on making an election.   Moreover, it is incumbent upon the parties to provide the specific information.   Plaintiff makes no reference to the date in his original complaint that was filed on June 22, 2022, and only references that his election period should be reopened so he can make "a fair and informed election."  *See generally* Doc. 1.  However, in his response to the motion to dismiss, Plaintiff states he "was unaware that a certificate of judgment affirming his conviction and death sentence has issued or could issue while he is still challenging that conviction and sentence, if it has issued, then when, because the date seems essential, the Defendant has stated in several filings that the Plaintiff's conviction and sentence are final, but has yet to state when they became so."  *See* Doc. 11 at 2.  Defendant also makes no reference to the specific date in its motion to dismiss/response to preliminary injunction but merely states, "[James'] conviction and sentence are final because he has completed his direct appeal, state postconviction review, and federal habeas review."  *See* Doc. 8 at 1-2.

As the Court noted in its prior opinion on the preliminary injunction, it is therefore not clear precisely when the trigger date was for the purposes of the election period.  *See* Doc. 10 at 15.  The Court also noted in its prior opinion that "there is no allegation or information before the Court that indicates that the thirty (30) day window has not passed.  Therefore, for the purposes of this analysis, the Court will analyze it under both the above dates as ultimately, it is a distinction without a difference."  *Id*.  That may no longer be the case given Plaintiff's response to the motion to dismiss.  Moreover, the preliminary injunction opinion was issued after Plaintiff mailed his

response, so there was no basis for fabrication based on the preliminary injunction denial.  Finally, Defendant had the opportunity to file a reply to the response and also had ample opportunity to correct the record.  Instead, Defendant seemingly rests on its generic statement that the conviction and sentence are final.  That alone does not provide the Court with sufficient information to conclude with absolute certainty on a Fed. R. Civ. P. 12(b)(6) motion to dismiss that the election time frame has passed or which Certificate of Judgment controls.

As noted in the Court's prior opinion, in its own research (which clearly falls outside the pleadings and the existing record), the Court found one Certificate of Judgment dated November 17, 2017, which would mean that James would have been required under the statute to make his election within thirty days of June 1, 2018 (i.e., June 1-30, 2018).  If this holds, then assuming Plaintiff received notice of the issuance, the claim would be time barred.  Moreover, Plaintiff was represented by counsel at the time through his habeas appeals.  However, Defendant has provided the Court nothing to show this is the controlling Certificate of Judgment for which the Court can consider under the current standard of review under Fed. R. Civ. P. 12(b)(6).

The second Certificate of Judgment is dated February 21, 2020, which would mean James should have made his election within thirty days of that date (i.e., February 21, 2020 through March 22, 2020).  As with the first Certificate of Judgment, there is nothing before the Court that shows this is the controlling certificate of judgment.  While it is clear that if it were, then the claim would be time barred.  But, again, this is a Fed. R. Civ. P. 12(b)(6) motion to dismiss and the Court may not consider matters outside the record.  While the Court can take judicial notice of court documents or documents that are incorporated by reference to a complaint and are undisputed, the Court cannot take judicial notice of matters that are unclear and must construe such matters in favor of Plaintiff.  These are simply the two (2) Certificates of Judgment that the Court found

through its own research given that Plaintiff and Defendant both failed to provide the specific date in question.

The Court concluded previously for the purposes of the preliminary injunction that James did not make his election during the required thirty-day timeframe since he requests that it be reopened nor does he make any allegation that he was unaware of the timeframe.  However, the Court's review for a preliminary injunction may consider matters outside the pleadings, and ultimately the burden was on Plaintiff to establish the elements for a preliminary injunction.  The circumstance are different in this review on the motion to dismiss.  It is not incumbent upon the Court to do the research for the parties or to make assumptions about the date in question.  Further, while not clearly identified in the complaint, Plaintiff makes a clear statement in his response that he was not aware the certificate of judgment had issued thereby triggering his election period for nitrogen hypoxia.  Moreover, the Court is well aware that the Plaintiff is *pro se* and must construe his pleadings liberally.  While the Court may not make the arguments for a *pro se* plaintiff, it also may not make arguments for the defendant when it also fails to provide the Court necessary information.  Therefore, the Court cannot conclude, based upon the arguments in Defendant's motion to dismiss, that the Plaintiff fails to make a claim upon which relief may be granted or that it is barred by the statute of limitations.  The statute of limitations on election cannot be clearly established that it has run when the Court does not even know the date upon which the elections period may have triggered.  It may very well have been triggered for a June 1-30, 2018 election with the enactment of the Ala. Code § 15-18-82.1(b)(2), but at present, there is insufficient information in the record for the Court to make such a conclusion.

To the extent Defendant seeks to hang its hat on the fact that Plaintiff received a copy of the election form "[s]ometime between June 26 and 28, but before the July 2, 2018 statutory

deadline, the ADOC directed that an election form be distributed to death-row inmates at Holman Correctional Facility ('Holman')" as it notes in its motion (Doc. 8 at 4 (citing *Smith v. Dunn*, 568 F. Supp. 3d 1244)), that does not solve the problem because it does not make it clear that Plaintiff was required to make such an election at that time.  The mere fact the Warden provided the form to every death-row inmate does not establish the triggering event as discussed in Ala. Code § 15-18-82.1(b)(2).  Additionally, the fact that Plaintiff was located at Holman as a death-row inmate does not alone make it clear that the Certificate of Judgment was issued before June 1, 2018. Indeed, as discussed above, there is a lack of clarity on that particular date.  By that same token, the fact the Warden may provide a person the form also does not conclusively establish that the Certificate of Judgment was issued nor that the inmate was required under the statute to make an election at that time.  It only establishes that the Warden provided a form to all the death-row inmates located at Holman – nothing more.  Further, the Defendant had the opportunity to address that particular issue in a reply after Plaintiff raised the question but failed to do so.

### iii.    Second Review of Request for Stay of Execution (Preliminary Injunction)

Despite the denial of the motion to dismiss for the reasons articulated above, the Court stands by its prior analysis on the denial of the request for a stay of execution through a preliminary injunction.  While the Court may be required to construe the *pro se* Plaintiff's allegations broadly, it is still not required to make inferential leaps to satisfy Plaintiff's burden to establish the need for a preliminary injunction/stay of execution, especially in light of the remaining analysis here. Rather, the analysis previously articulated in this opinion merely applies to the fact that the Court must deny the motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) because Defendant failed to provide the Court with the date of the controlling Certificate of Judgment, which would have triggered the election period.  As such, the motion to dismiss must be denied on that technicality,

and the Court need not address the failure to state a claim and statute of limitations arguments without that information.  While the Court may ultimately agree that Plaintiff fails to establish a claim under the Equal Protection Clause of the Fourteenth Amendment, it is not clear from the current record that we have even reached that point.

Therefore, the Court turns again to look at the request for a stay of execution through a preliminary injunction having now considered Plaintiff's response to the motion to dismiss, which was received after the issuance of its first opinion.

The standard governing a stay of execution mirrors that for a preliminary injunction.  *See Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011).  The party seeking the preliminary injunction bears the burden of establishing its entitlement to relief.  *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).  Therefore, Plaintiff must prove (1) a substantial likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest.  *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1262-63 (11th Cir. 2004)); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (stating same four requirements).  Additionally, in a case where the party opposing the preliminary injunction is the government, the third and fourth elements merge.  *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (explaining that "where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest").  "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites."  *GeorgiaCarry.Org*, 788 F.3d at 1322 (quoting *Suntrust Bank v.*

*Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001)); *accord Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("A preliminary injunction is a drastic remedy and [the movant] bears the burden to clearly establish each of the four prerequisites."); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[G]ranting a preliminary injunction is the exception rather than the rule" and movant must clearly carry the burden of persuasion.). <u>All</u> elements must be met or the request for an injunction fails. Moreover, "'the first and most important question' regarding a stay of execution is whether the petitioner is substantially likely to succeed on the merits of his claims." *Price*, 920 F.3d at 1323 (quoting *Jones v. Comm'r Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016)).

First, in this case, the need for an expedited process in adjudicating these constitutional claims was avoidable because the case could have been brought much earlier. Instead, Plaintiff waited until after his execution date was set to file his constitutional claims relating to the election of nitrogen hypoxia, which left the Court with little time to develop a more complete record. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Gomez v. U. S. Dist. Court for N. Dist. of Cal.,* 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L. Ed. 2d 293 (1992); *see also Dunn*, --- U.S. ---, 139 S. Ct. 1312, 203 L. Ed. 2d 702 (2019) (quoting *Gomez*); *Hill v. McDonough*, 547 U. S. 573, 584, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006) (stating that equity weighs against a stay when "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay"). Further, a preliminary injunction is considered "an extraordinary and drastic remedy," and James bears "the burden of persuasion" to clearly establish each of these elements. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks omitted).

Plaintiff's complaint is thin on details. His response seems to raise for the first time that

he was unaware of the election triggering event (the issuance of the Certificate of Judgment) and, therefore, did not know to make the election since his federal habeas case was still pending before the Eleventh Circuit.  Given that Defendant also failed to identify the precise date of the Certificate of Judgment at issue, that is enough to avoid dismissal under Fed. R. Civ. P. 12(b)(6) as it leaves a factual question murky for further proceedings.  However, it is not sufficient to establish substantial likelihood of success on the merits.  Rather, the dearth of evidence still compels denial of a stay of execution through a preliminary injunction.  The law is clear that it is Plaintiff's burden to meet those four (4) requirements, and despite this ruling on the motion to dismiss, it does not change the fact that Plaintiff failed to meet the burden for a stay of execution.

## V.   CONCLUSION

Based on the above, the *Motion to Dismiss Plaintiff's Complaint* (Doc. 8) is **DENIED**. However, Plaintiff still has not carried his burden of persuasion for an injunction to issue on a stay of execution.  Accordingly, his second request for a preliminary injunction contained within his response to the motion to dismiss (Doc. 11) is **DENIED**.  As a result of the denial of the motion to dismiss, Defendant shall file his answer in accordance with Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Plaintiff by overnight mail and, given the time constraints involved in this case, to send a copy of the Memorandum Opinion and Order to the Warden by either electronic mail or facsimile with the instructions that a copy of this Memorandum Opinion and Order be given to the Plaintiff immediately upon receipt.

**DONE** and **ORDERED** this 18th day of July 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE