[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12345

Non-Argument Calendar

_____

JOE NATHAN JAMES, JR

Plaintiff-Appellant,

*versus*

ATTORNEY GENERAL, STATE OF ALABAMA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

2                      Opinion of the Court    22-12345 & 22-12346

D.C. Docket No. 1:22-cv-00241-TFM-N

———————————————

———————————————

No. 22-12346

Non-Argument Calendar

———————————————

JOE NATHAN JAMES, JR

                                        Plaintiff-Appellant,

*versus*

HOLMAN CF WARDEN,
COMMISSIONER,   ALABAMA   DEPARTMENT   OF
CORRECTIONS,
ATTORNEY GENERAL, STATE OF ALABAMA,
CLERK - ALABAMA SUPREME COURT,
MARSHAL, APPELLATE COURTS OF ALABAMA,
SHERIFF OF JEFFERSON COUNTY,

                                        Defendants-Appellees.

———————————————

Appeal from the United States District Court

for the Southern District of Alabama

D.C. Docket No. 1:22-cv-00253-TFM-N

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Joe Nathan James, Jr. was convicted and sentenced to death for the murder of Faith Hall Smith. On the eve of his execution, scheduled for July 28, 2022, James filed two separate 42 U.S.C. section 1983 complaints in the Southern District of Alabama. In case number 22-CV-241, James alleged that the Attorney General of Alabama violated the Equal Protection Clause by setting his execution date before the execution dates of other similarly situated death-row inmates represented by the federal public defender's office. In case number 22-CV-253, James alleged that five state officials violated the Due Process Clause by issuing and serving the execution warrant in violation of Alabama law. The district court issued two orders. In case number 22-CV-241, the district court denied James's motion to stay his execution. And, in case number 22-CV-253, the district court denied James's motion to stay his execution and dismissed his complaint because it failed to state a claim. James appeals both orders and has moved for a stay of execution. After careful review of the record and the parties' briefs, we affirm the district court's orders and deny his stay motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *The Murder*

This is how we described James's murder the last time he appealed to this Court. The facts have not changed:

> James and Smith dated for a time in the early 1990s. They had a volatile relationship and James stalked and harassed Smith after they broke up, showing up uninvited at her home on several occasions and threatening to kill Smith and her ex-husband. On the day of the murder, James followed Smith to her friend's apartment and forced his way inside, carrying a gun. James demanded to know about a man he had seen with Smith, while Smith hid behind her friend and asked him to put the gun away—which he did, briefly. After a few minutes, however, James said 'f\*\*k this s\*\*t,' pulled his gun back out, and started shooting. Smith ran toward the bathroom and James chased her. James shot Smith three times: once in the abdomen, once through the arm and chest, and once in the top of the head, apparently after she had fallen to the floor. She died of her gunshot wounds.

*James v. Warden*, 957 F.3d 1184, 1186 (11th Cir. 2020).

### *Procedural History*

"The jury found James guilty of intentional murder during a first-degree burglary, a capital crime." *Id.* at 1188 (citing Ala. Code § 13A-5-40(a)(4) (1975)). And, after penalty-phase proceedings, "[t]he jury unanimously recommended a death sentence, and the

Case 1:22-cv-00241-TFM-N   Document 21   Filed 07/26/22   Page 5 of 29   PageID #: 134
USCA11 Case: 22-12345   Date Filed: 07/26/2022   Page: 5 of 27

court sentenced James to death." *Id.*  "The Alabama Court of Criminal Appeals affirmed James's conviction and death sentence on direct appeal, and the United States Supreme Court denied his petition for certiorari." *Id.* (citing *James v. State*, 788 So. 2d 185 (Ala. Crim. App. 2000), *cert. denied*, 532 U.S. 1040 (2001)).

The Alabama circuit court denied James's motion for collateral relief under Alabama Rule of Criminal Procedure 32, and "the Alabama Court of Criminal Appeals affirmed." *Id.* at 1188–90 (citing *James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010)).  The district court denied James's petition for federal habeas corpus relief under 28 U.S.C. section 2254, *id.* at 1190, we affirmed, *id.* at 1193, and the United States Supreme Court again denied James's certiorari petition, *James v. Raybon*, 141 S. Ct. 1463 (2021).

After the Supreme Court denied James's last certiorari petition, the state moved the Alabama Supreme Court to set an execution date because James's "conviction and sentence [were] final"— "he ha[d] completed his direct appeal, state postconviction review, and federal habeas review."  On June 7, 2022, the Alabama Supreme Court granted the state's motion and fixed Thursday, July 28, 2022, as the date for James's execution.  The execution will take place at the Holman Correctional Facility.

Since the Alabama Supreme Court's June 7 order setting the execution date, James has filed at least seven complaints in the Southern District of Alabama.  Two are relevant here.

*Southern District of Alabama Case Number 22-CV-241*

In case number 22-CV-241, James filed a prisoner complaint under section 1983 against Alabama Attorney General Steve Marshall in his official capacity alleging that the Attorney General violated James's Fourteenth Amendment equal protection rights. James alleged that the Attorney General, in order to end a lawsuit brought against the state's lethal injection protocol, entered into an agreement with death-row inmates represented by the federal public defender's office to allow them to elect nitrogen hypoxia as their method of execution. And the Attorney General agreed, James alleged, not to seek execution dates for those death-row inmates represented by the federal public defender's office that elected nitrogen hypoxia as their method of execution.

The Attorney General's agreement violated James's equal protection rights, he alleged, because even though he was similarly situated to the death-row inmates represented by the federal public defender's office, and even though they had older cases, his execution date had been set while theirs hadn't. James alleged that the Attorney General protected the death-row inmates represented by the federal public defender's office "based solely on their representation." James moved for a stay of his execution and requested an order that he be part of the same agreement, and allowed to make the same election, as the death-row inmates represented by the federal public defender's office.

The district court denied the motion to stay the execution date because James could not succeed on the merits of his equal

protection claim.  As the district court explained, in 2018, Alabama added nitrogen hypoxia as an alternative method of execution to lethal injection and electrocution.  Death-row inmates had either thirty days from June 1, 2018, or thirty days from the issuance of the certificate of judgment, whichever was later, to elect for death by nitrogen hypoxia or else the option was waived.  The Alabama Department of Corrections "distributed a nitrogen hypoxia election form"—"drafted by an attorney in the Federal Defender's Office for the Middle District of Alabama"—"to all death-sentenced inmates."  During the election period, "48 inmates elected nitrogen hypoxia," but not James.

"It [was] clear from the allegations," the district court wrote, "that James did not make his election during the required thirty-day timeframe since he request[ed] that it be reopened, nor d[id] he make any allegation that he was unaware of the timeframe." "Rather," the district court explained, James "merely assert[ed] that he was not able to make an informed decision and was unaware he would be treated differently than . . . those who did not elect nitrogen hypoxia as their method of execution would have their dates of execution set before those who did make the alternative election."

But, the district court said, the "Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the law, which is essentially a direction that all persons similarly situated should be treated alike."  (Quotation omitted.)  And, "[a]

classification not involving fundamental rights or discriminating against a suspect class cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." (Quotation omitted.)   The district court reasoned that "inmates who elected nitrogen hypoxia [were] not similarly situated to inmates who did not so-elect." So "James, as an inmate who did not elect nitrogen hypoxia and whose appeals [were] exhausted, [was] not similarly situated in all material respects to inmates who did timely elect nitrogen hypoxia and whose appeals [were] exhausted." The district court also concluded that, even if James were similarly situated to other death-row inmates, he was treated exactly the same because every inmate was given thirty days within which to elect nitrogen hypoxia as their method of execution.

James appeals the district court's order denying his motion for a stay of execution.

*Southern District of Alabama Case Number 22-CV-253*

In case number 22-CV-253, James filed a prisoner complaint under 42 U.S.C. section 1983 against Terry Raybon, the Warden of Holman Correctional Facility, John Hamm, the Commissioner of the Alabama Department of Corrections, Julia Jordan Weller, the Clerk of the Alabama Supreme Court, Earl Marsh, Jr., the Marshal of the Alabama Supreme Court, Steve Marshall, the Alabama Attorney General, and Mark Levie Pettway, the Sheriff of Jefferson County, Alabama.  James alleged that the Alabama Supreme Court granted the Attorney General's motion and issued an execution

warrant on June 7, 2022, and the next day, the execution warrant was delivered to the Warden to begin the execution process. But, James alleged, the execution warrant and the procedure for serving it did not comply with Alabama Code section 15-18-80. Because the Attorney General, Commissioner, Warden, Clerk, Marshal, and Sheriff did not comply with section 15-18-80, James alleged that the execution warrant was void and he was denied substantive and procedural due process guaranteed by the Fourteenth Amendment. James moved for a stay of execution and for an order to the Warden to cease the execution process and to disregard the execution warrant.

The district court screened the complaint under the Prison Litigation Reform Act and found that it failed to state a claim upon which relief could be granted. The district court explained that James's suit "r[ose] and f[ell] with the validity of the execution order under which his death sentence [was] currently being carried out." "That is, no defendant named in this action [could] be liable for constitutional violations alleged by James if the June 7, 2022 execution order was issued and delivered in a manner authorized by state law." The district court concluded that "it was." "[T]he issuance and delivery of the Alabama Supreme Court's order setting James'[s] execution for July 28, 2022, complie[d] with current state procedures and [was] a valid, legal execution warrant." And James's reliance on section 15-18-80, the district court explained, "as the proper procedure for the issuance of Alabama execution warrants, [was] simply incorrect."

Because the execution warrant complied with Alabama law, the district court found, "James ha[d] failed to establish a substantial likelihood of success on the merits of his claim and therefore [was] not entitled to a stay of execution." And, "James ha[d] not and c[ould not] show that Defendants violated" his constitutional rights. The district court denied James's motion to stay the execution and dismissed the complaint without prejudice.

## STANDARD OF REVIEW

"We review the denial of a stay of execution under the abuse-of-discretion standard." *Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011). A court "may grant a stay of execution only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Id.* "With respect to the district court's factual findings, we review those for clear error. Under this standard, we may not reverse simply because we are convinced that we would have decided the case differently." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (citation and quotation omitted).

"We review dismissal under [section] 1915(e)(2)(B)(ii) de novo and view the allegations in the complaint as true." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). "The standards governing dismissals under Rule 12(b)(6) apply to [section] 1915(e)(2)(B)(ii)." *Id.* "Finally, pro se pleadings are held to a

less strict standard than pleadings filed by lawyers and thus are construed liberally." *Id.* (emphasis omitted).

## DISCUSSION

We first address James's appeal of the district court's order denying his motion to stay the execution in case number 22-CV-241.   Then we discuss James's appeal of the district court's order denying his motion to stay and dismissing his complaint in case number 22-CV-253.  And finally we consider James's motion to stay his execution.

### Equal Protection Claim in Case Number 22-CV-241

James contends that his equal protection rights were violated because the death-row inmates represented by the federal public defender's office were allowed to elect nitrogen hypoxia as their method of execution and the Attorney General agreed not to seek execution dates for those who elected nitrogen hypoxia.  The death-row inmates represented by the federal public defender's office, James asserts, "had the benefit of counsel to explain the magnitude of the election and its benefit" and he "should have been afforded the same opportunity to make an informed decision." James argues that he was similarly situated to the death-row inmates represented by the federal public defender's office—they even had older cases—but the Attorney General moved to set his execution date and not theirs.  We conclude that the district court did not abuse its discretion in denying James's motion for a stay of

execution because his equal protection claim was not likely to suc-
ceed on the merits.

"To prevail on his equal-protection claim, [James] must first
show that the [s]tate will treat him disparately from other similarly
situated persons." *Price*, 920 F.3d at 1323 (quotation omitted).
"Second, if a law treats individuals differently on the basis of a sus-
pect classification, or if the law impinges on a fundamental right, it
is subject to strict scrutiny." *Id.* (cleaned up). "Otherwise, [James]
must show that the disparate treatment is not rationally related to
a legitimate government interest." *Id.*

James "has not demonstrated that he was or will be treated
differently than similarly situated inmates." *See id.* As the district
court found, it was established and undisputed that James "had the
same opportunity as every other inmate to elect nitrogen hypoxia
as his method of execution." *See id.* at 1323–24.

"[T]he Alabama legislature amended the [s]tate's execution
statute to add nitrogen hypoxia as an approved method of execu-
tion." *Id.* at 1321. "The amendment became effective on June 1,
2018." *Id.* (citing Ala. Code § 15-18-82.1). "The statute reads, in
relevant part, 'A death sentence shall be executed by lethal injec-
tion, unless the person sentenced to death affirmatively elects to be
executed by electrocution or nitrogen hypoxia.'" *Id.* at 1321–22
(quoting Ala. Code § 15-18-82.1(a)). "The statute also provides that
the election of death by nitrogen hypoxia is waived unless it is per-
sonally made by the inmate in writing and delivered to the warden
within thirty days after the certificate of judgment pursuant to a

decision by the Alabama Supreme Court affirming the sentence of death." *Id.* at 1322 (citing Ala. Code § 15-18-82.1(b)(2)). "If a judgment was issued before June 1, 2018 . . . the election must have been made and delivered to the warden within thirty days of June 1, 2018."[1] *See id.*

Critically, "[w]hen the [s]tate added nitrogen hypoxia as a statutorily viable method of execution in June 2018, all inmates whose death sentences were final as of June 1, 2018, received a thirty-day period to elect nitrogen hypoxia." *Id.* at 1324 (citing Ala. Code § 15-18-82.1(b)(2)). As we explained in *Price*:

> According to the [s]tate, all death-row inmates at Holman . . . were provided with a copy of an election form, and forty-eight of those inmates timely elected nitrogen hypoxia. . . . The record contains the affidavit of Captain Jeff Emberton, who attested to the fact that, in mid-June 2018, after the [s]tate authorized nitrogen hypoxia as a method of execution, the warden of Holman directed him to provide every death-row

---

[1] James contends that his "time to make the election for nitrogen hypoxia as the method of execution has not passed" because it is unclear when the Alabama Supreme Court issued the certificate of judgment. But it is not unclear. As the state explains in its brief, the Alabama Supreme Court issued its certificate of judgement affirming James's sentence of death on December 15, 2000. Because the Alabama Supreme Court's judgment affirming James's death sentence was issued before June 1, 2018, James had to make and deliver his election of nitrogen hypoxia within thirty days of June 1, 2018. *See* Ala. Code § 15-18-82.1(b)(2).

inmate an election form and an envelope.  According
to Emberton, he delivered the form to every death-
row inmate at Holman as instructed.  The form iden-
tified Act 2018-353 (which amended Ala. Code [sec-
tion] 15-18-82.1 to include nitrogen hypoxia) and al-
lowed for the inmate to state that he was making the
election of nitrogen hypoxia as the means of execu-
tion.

*Id.*; *see also Dunn v. Price*, 139 S. Ct. 1312, 1312 (2019) ("In
June 2018, death-row inmates in Alabama whose convictions were
final before June 1, 2018, had 30 days to elect to be executed via
nitrogen hypoxia. . . . [T]he record indicates that all death-row in-
mates were provided a written election form, and 48 . . . death-row
inmates elected nitrogen hypoxia.").[2]

The election form that was distributed to "every death-row
inmate" was created by the federal public defender's office.  The
form was distributed to both death-row inmates represented by the
federal public defender's office and to inmates not represented by
the office, and inmates not represented by the office were among

─────────────────

[2] For the first time on appeal, James asserts that he was given only 72
hours and not the statutory thirty days to elect nitrogen hypoxia.  But the dis-
trict court found that all death-row inmates had a "thirty-day election period"
to elect nitrogen hypoxia as their method of execution.  And, by law, James
had thirty days to make his election.  James has not alleged that he made an
election within the thirty-day window, and he has not shown that the district
court's finding that he had thirty days to make the election was clearly errone-
ous.

those who timely elected to be executed by nitrogen hypoxia. *See Price*, 920 F.3d at 1324 n.4 ("The [s]tate admits . . . that it did not create the election form.  Rather, it claims the [f]ederal [p]ublic [d]efender's [o]ffice created the form and gave a copy of it to the warden of Holman.  But inmates not represented by the [f]ederal [p]ublic [d]efender's [o]ffice were among those who timely completed the form."). James concedes he was given the election form, and, as the district court found, he "did not make his election during the required thirty-day timeframe."[3]

Because James "did not timely elect the new protocol, he is not similarly situated in all material respects to" the death-row inmates represented by the federal public defender's office who did make the election within the thirty-day timeframe.  *See id.* at 1325. "And because [James] has not shown that he is similarly situated to those inmates, he cannot demonstrate any equal-protection violation due to the [s]tate's denial of execution by nitrogen hypoxia." *See id.*; *Woods v. Comm'r, Ala. Dep't of Corrs.*, 951 F.3d 1288, 1294–95 (11th Cir. 2020) (same).

---

[3] James, like the inmate in *Price*, "argue[s] that the [Alabama Department of Corrections]'s provision of the election form was insufficient." *Price*, 920 F.3d at 1324.  "But [James] was represented by counsel, so any doubts [he] had about the form could have been resolved by consulting with his attorney." *Id.* Plus, several other death-row inmates not represented by the federal public defender's office "were able to make the timely election based on the provision of the form by the [s]tate." *Id.*

"But even if [James] were similarly situated to the other death-row inmates, he cannot establish an equal-protection violation because he was treated exactly the same as the other inmates. Every inmate was given thirty days within which to elect nitrogen hypoxia as their method of execution." *See Price*, 920 F.3d at 1325.

Finally, even if James were similarly situated to the other death-row inmates, and even if he were treated differently, the disparate treatment was rationally related to a legitimate government interest.  James argues that he was treated differently than the death-row inmates represented by the federal public defender's office who elected nitrogen hypoxia as their method of execution "solely based on their representation" because his execution date has been set while theirs haven't.  But legal representation is not a suspect class like race or gender, and James does not have a fundamental right to be represented by the federal public defender's office and he does not have the fundamental right to representation during postconviction proceedings. *See United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc) ("An indigent criminal defendant does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause." (quotation omitted)); *Barbour v. Haley*, 471 F.3d 1222, 1230 (11th Cir. 2006) ("[D]eath-sentenced inmates have no federal constitutional right to postconviction counsel.").  So rational basis review applies, and we review James's equal protection claim to see if there is a rational relationship between the disparity of treatment and some legitimate government purpose. *See Price*,

920 F.3d at 1325 ("[A] statute is presumed constitutional, and a classification not involving fundamental rights nor proceeding along suspect lines cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." (quotation omitted)).

Here, there is.   During the thirty-day election period, "[n]early 50 of the 175 death-sentenced inmates in Alabama elected nitrogen hypoxia . . . , including inmates like [James] whom the [f]ederal [p]ublic [d]efenders did not represent." *Woods*, 951 F.3d at 1291 (citing *Dunn*, 139 S. Ct. at 1312).   As we explained in *Woods*,

> When Alabama added nitrogen hypoxia as an alternative method of execution, it did not, and still does not, have a protocol in place for nitrogen-hypoxia executions.   The Alabama Department of Corrections 'has been diligently working to formulate a safe hypoxia protocol,' but it will not have a protocol in place . . . .   The lack of a protocol has affected the order in which the State has moved for executions.   'As a matter of custom, the [s]tate waits to move for an inmate's execution until he has exhausted his conventional appeals:  direct appeal, state postconviction, and federal habeas.'   But some of the inmates who have exhausted their conventional appeals elected to be executed by nitrogen hypoxia and so cannot be executed yet.   For those inmates like [James] who did not elect nitrogen hypoxia, the [s]tate is moving for execution dates after they have completed their appeals.

*Id.* at 1291–92.  The state has a legitimate governmental purpose for scheduling the execution dates for inmates who have exhausted their appeals and did not elect nitrogen hypoxia as their method of execution:  "the efficient and orderly use of state resources in planning and preparing for executions."  *Price*, 920 F.3d at 1325.

James, like the inmate in *Price*, "takes issue with the fact that most of the inmates that timely elected nitrogen hypoxia were represented by the [f]ederal [p]ublic [d]efender's [o]ffice and that they were given an explanation of their rights by that office before receiving the form."  *Id.* at 1324.  But James, as he concedes, "was also represented by counsel, and he could have asked for an explanation of the form."  *Id.*; *Woods*, 951 F.3d at 1295 (rejecting similar equal protection claim partly because "Woods could have contacted his attorney for advice").  And, in any event, "the interactions between other inmates and the [f]ederal [p]ublic [d]efender's [o]ffice do not support any unequal treatment by *the [s]tate* of similarly situated individuals," *Woods*, 951 F.3d at 1295 (quoting *Price*, 920 F.3d at 1324), which is required for an equal protection claim.

Because James is not similarly situated to the death-row inmates represented by the federal public defender's office who elected nitrogen hypoxia as their method of execution, he was treated exactly the same as those inmates, and there was a legitimate government interest for any disparate treatment, James did not have a substantial likelihood of succeeding on his equal protection claim in case number 22-CV-241.  And because he did not have a substantial likelihood of success on his equal protection claim, the

district court did not abuse its discretion in denying his motion for a stay of execution.

*Due Process Claim in Case Number 22-CV-253*

In his appeal in case number 22-CV-253, James argues that the Attorney General, Commissioner, Warden, Clerk, Marshal, and Sheriff did not comply with Alabama Code section 15-18-80 when they issued and served the execution warrant. The state officials' failure to comply with section 15-18-80, James contends, violated his substantive and procedural due process rights. We agree with the district court that James failed to state a—and did not have a substantial likelihood of success on his—due process claim.

"The Due Process Clause of the Fourteenth Amendment provides 'nor shall any State deprive any person of life, liberty, or property, without due process of law.'" *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc) (quoting U.S. Const. amend. XIV, § 1). "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *Id.* "A violation of either of these kinds of protection may form the basis for a suit under section 1983." *Id.*

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is," *id.* at 1556, those that are "deeply rooted in our history and tradition" and "essential to our Nation's scheme of ordered liberty," *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022) (quotations and

alteration omitted).  Traditionally, "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution." *McKinney*, 20 F.3d at 1556 (quotation omitted).

The right to have an execution warrant issued and served consistent with section 15-18-80 is not deeply rooted in our history and tradition and is not essential to our Nation's scheme of ordered liberty.  The execution warrant procedure in section 15-18-80 has shallow roots.  It was last amended in 1971—almost 200 years after Independence.  *See* 1971 Ala. Laws 3792–94.  And each state (that has the death penalty) has its own unique procedures for issuing and serving execution warrants that are different from how Alabama handles execution warrants.  *Compare, e.g.*, Ala. Code § 15-18-80, *with* Fla. Stat. § 922.052, *and* O.C.G.A. § 17-10-33.  These unique execution warrant procedures, like employment and tort law, are creatures of state law and are not created only by the Constitution.

On the other hand, the procedural component of the Due Process Clause, "in its most basic form, . . . requires notice and an opportunity to be heard." *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019); *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009) ("[T]he root requirement of the Due Process Clause is that one be given notice and an opportunity to be heard." (quotation omitted)).

James had both before the execution date was set. The state's motion to the Alabama Supreme Court to set the execution date put James on notice that the Alabama Supreme Court was considering setting the date. That was in March 2022. James had a three-month opportunity to be heard on the motion before the Alabama Supreme Court issued its order setting the execution date on July 28. James had the process he was due under the Fourteenth Amendment.

James argues that by not following the execution warrant procedures in section 15-18-80, the state officials violated his due process rights. James's view is that because the state officials violated section 15-18-80, it necessarily follows that they violated his due process rights.

But we've rejected the argument that procedural due process violations necessarily flow from violations of state or federal law. In *Smith v. Georgia*, 684 F.2d 729 (11th Cir. 1982), the plaintiff made essentially the same argument that James makes in this case. *See id.* at 732 n.6. The plaintiff argued that "the state agency's failure to follow its own regulations, without more, offends due process." *Id.* We rejected the argument, explaining that "[w]hile it is possible that disregard for state procedures may support a constitutional claim, the two analyses are separate, and even if [the state agency] departed from its own guidelines, not every violation by a state agency of its own rules rises to the level of a due process infringement." *Id.* (citations omitted).

And, in *ACLU of Florida*, we explained that even if the school board "had violated its own regulation, it would not follow that it had violated due process."  557 F.3d at 1229.  "The district court's belief," we said, "that an agency must follow its own rules in order to avoid infringing due process rights cannot be grounded in the law of this circuit."  *Id.*  (quotation and citation omitted).  "Under that belief," we concluded, "every procedural regulation an agency adopts effectively amends the Constitution so that violating the regulation violates the Constitution.  That is not the law."  *Id.*; *see also Dacostagomez-Aguilar v. U.S. Att'y Gen.*, --- F.4th ----, 2022 WL 2817445, at *6 (11th Cir. July 19, 2022) ("Under this Circuit's precedent, however, a mere irregularity in agency procedure does not deny a person due process.  Something more is needed to create a constitutional violation—the procedural error must deny a person adequate notice or an opportunity to be heard." (citations omitted)).  Because James had notice that the Alabama Supreme Court was considering setting his execution date and an opportunity to be heard on why it shouldn't set the date, his procedural due process rights were not violated.

But even if a violation of state law, by itself, meant that James's due process rights were violated, James would still have to allege a violation of Alabama law to state a section 1983 due process claim.  As the district court explained, James's claim "rises and falls with the validity of the execution order under which his death sentence is currently being carried out" because "no defendant named in this action may be liable for constitutional violations

alleged by James if the June 7, 2022 execution order was issued and delivered in a manner authorized and set out by state law." Here, it was.

James argues that section 15-18-80 is the proper procedure for issuing an execution warrant in Alabama and the state officials failed to comply with these procedures.[4] But, as the district court explained, the statute James relies on, section 15-18-80, is in Title 15 of the Alabama Code. The first section of Title 15, section 15-1-1, provides that "[a]ny provisions of this title regulating procedure shall apply only if the procedural subject matter is not governed by rules of practice and procedure adopted by the Supreme Court of Alabama." Ala. Code § 15-1-1.

The Alabama Supreme Court adopted a rule of practice and procedure governing execution warrants. Alabama Rule of Appellate Procedure 8(d)(1) provides that:

> When pronouncing a sentence of death, the trial court shall not set an execution date, but it may make such orders concerning the transfer of the inmate to the prison system as are necessary and proper. The supreme court shall at the appropriate time enter an order fixing a date of execution, not less than 30 days from the date of the order, and it may make other

---

[4] As a general matter, section 15-18-80 directs the trial court, through its clerk, to be the one to issue an execution warrant (and not the Alabama Supreme Court). *See* Ala. Code § 15-18-80.

appropriate orders upon disposition of the appeal or
other review.  The supreme court order fixing the ex-
ecution date shall constitute the execution warrant.

Ala. R. App. P. 8(d)(1); *see* Ala. R. App. P. 8 committee comments
to 1985 amendment ("Subdivision (d)(1) supersedes Code of Ala-
bama 1975, . . . [section] 15-18-80 . . . .  It is based on the recogni-
tion that appeal is automatic in death penalty cases, and that the
supreme court is in the best position to set an execution date and
enter any necessary stays." (citations omitted)).  Under section 15-
1-1, because the Alabama Supreme Court adopted a procedural
rule for the issuance of execution warrants, the procedural rule
governs instead of the execution warrant procedure in Title 15.
*See Holsemback v. State*, 443 So. 2d 1371, 1374 (Ala. Crim. App.
1983) ("It is undisputed that the Legislature intended to grant the
supreme court this authority, for Alabama Code Section 15-1-1
(1975) provides that the rules of criminal practice and procedure
adopted by the Alabama Supreme Court shall take precedence over
the statutes governing criminal procedure.  Although the general
rule is that a legislative enactment takes precedence over a court
rule, when the Legislature gives the court the power to make rules
and the court acts, the rules become of 'legislative origin in sub-
stance.'" (citations omitted)).

The Alabama Supreme Court followed the governing pro-
cedure for the issuance of an execution warrant in Rule 8(d)(1).
The state trial court did not set an execution date.  The Alabama
Supreme Court entered an order fixing the date for execution and

the date it set was not less than thirty days from the date of the order.  And the Alabama Supreme Court's order fixing the date for the execution constituted the execution warrant.  Ala. R. App. P. 8(d)(1).

As the district court concluded, the Alabama Supreme Court's order setting the execution date is "in full compliance with Rule 8 and Alabama law.  James'[s] contention that the execution order does not constitute a valid execution warrant under Alabama law is simply incorrect."

Because the Alabama Supreme Court's order setting James's execution date did not violate James's substantive and procedural due process rights, and did not violate Alabama law, the district court did not err in dismissing his complaint for failure to state a claim and did not abuse its discretion in denying his motion to stay the execution.

### Motion for Stay of Execution

Our standard governing a stay of execution mirrors the standard for the district court:  James must establish a substantial likelihood of success on the merits.  *See Woods*, 951 F.3d at 1292. For the reasons we have discussed above, James has failed to show a substantial likelihood of success on the merits of his equal protection and due process claims.  Thus, his motion for a stay of execution is due to be denied.  *See id.* at 1293 ("Woods also has failed to establish a substantial likelihood of success on the merits of any of

his claims.  That failure is a separate reason we must deny his motion.").[5]

---

[5]  In his stay motion, James appears to raise—for the first time—an Eighth Amendment claim that he will be "tortured through" the state's "use of outdated and ineffective" Midazolam, and thus, he should be allowed to elect nitrogen hypoxia as the method of execution.  But James cannot have a substantial likelihood of success on a claim that he didn't raise in the district court.  A court may grant a stay of execution only if the inmate shows that he has a substantial likelihood of success on the merits of a claim he raised in the district court.  But if the movant never raised the claim in the district court, he cannot have a substantial likelihood of success on the merits of that unraised claim.  *See Cassell v. Snyders*, 990 F.3d 539, 544, 551 (7th Cir. 2021) (concluding that the plaintiffs had failed to show a likelihood of success on their procedural due process claim because it "was not presented to the district court" and was "forfeited for purposes of a preliminary injunction"); *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 467 n.10 (5th Cir. 2021) ("[T]he Court will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory." (quotation omitted)).  Because James did not raise an Eighth Amendment method of execution claim in case numbers 22-CV-241 and 22-CV-253, he cannot succeed on the merits of that claim here.

In any event, we rejected a similar Eighth Amendment claim in *Price*.  To succeed on an Eighth Amendment method of execution claim, the inmate must show (among other things) that an alternative method of execution "significantly reduce[s] a substantial risk of severe pain."  *Price*, 920 F.3d at 1326 (quotation omitted).  In *Price*, we concluded that the inmate hadn't shown that nitrogen gas significantly reduced a substantial risk of severe pain as compared to lethal injection partly because, like with lethal injection, "feelings of suffocation could also occur with nitrogen gas" and an inmate "could be capable of feeling pain for 20 or 30 seconds when nitrogen is used for an execution." *Id.* at 1330; *see also Glossip v. Gross*, 576 U.S. 863, 881 (2015) ("[N]umerous courts have concluded that the use of [M]idazolam as the first drug in a three-

## CONCLUSION

In sum, in Southern District of Alabama case number 22-CV-241, we affirm the district court's order denying James's motion to stay his execution date.  In Southern District of Alabama case number 22-CV-253, we affirm the district court's order denying James's motion to stay his execution date and dismissing his complaint for failure to state a claim.  And we deny James's motion to stay his execution.

**AFFIRMED; MOTION DENIED.**

---

drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride."). James has not alleged, and he has not shown, that nitrogen hypoxia significantly reduces a substantial risk of severe pain as compared to lethal injection.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 26, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-12345-P   ; 22-12346 -P
Case Style:  Joe Nathan James, Jr v. Attorney General, State of Alabama
District Court Docket No:  1:22-cv-00241-TFM-N

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website. Enclosed
is a copy of the court's decision filed today in this appeal. Judgment has this day been entered
pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP
41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>David L. Thomas</u> at <u>(404) 335-6171</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: David L. Thomas
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion